Lt. Robert C. **BALLARD**, U. S. N.,
Plaintiff,

v.

Melvin **LAIRD**, Secretary of De-
fense et al., Defendants.

Civ. No. 72–218–S.

United States District Court,
S. D. California.

June 26, 1973.

Charles R. Khoury, Jr., La Jolla, Cal.,
for plaintiff.

Frederick B. Holoboff, Asst. U. S.
Atty., S. D. Cal., San Diego, Cal., for de-
fendants.

## OPINION

Before CARTER, Circuit Judge, and
EAST and SCHWARTZ, District Judg-
es.*

EAST, Senior District Judge:

## STATEMENT OF CASE

*Factual Situation:*

It appears from the complaint herein
that:

The plaintiff, Lt. Robert C. Ballard,
U.S.N. (Ballard) as of June 16, 1972,
has been in continuous active commis-
sioned service (service) in the United
States Navy (USN) since August 16,
1962, and had attained the commission
grade of lieutenant, USN.   Prior to

---

* *Honorable James M. Carter, Senior United
States Circuit Judge for the Ninth Circuit,
William G. East, Senior United States
District Judge for the District of Oregon,
Edward J. Schwartz, Chief Judge, United
States District Court for the Southern*

*District of California, constituting a
statutory three-judge district court by
designation of Chief Judge Richard H.
Chambers for the Ninth Circuit, dated
July 24, 1972.*

commissioning, Ballard had served in the USN as an enlisted man for seven years.

Notwithstanding a continuing meritorious service on his part, and pursuant only to command function regulation and custom, Ballard had not been promoted to the grade of lieutenant commander and had twice been passed over for such promotion.

The parties concede that on or about March 17, 1972, the Chief of Naval Personnel, USN, acting for himself and all the defendants in their respective capacities, respectively, advised Ballard that the provisions of 10 U.S.C. § 6382 required that he, and other "officers of [his] category be honorably discharged on 30 June of the fiscal year they twice fail of selection for promotion to lieutenant commander. This provision of the law provides no latitude with regard to your continuation on active duty beyond 30 June 1972. Accordingly, your discharge will be processed for 30 June 1972 unless you request earlier separation . . . ."

*Statutes:*

The pertinent statutes involved in this cause are 10 U.S.C. § 6382

"(a) Each officer on the active list of the Navy serving in the grade of lieutenant, except an officer in the Nurse Corps, . . . shall be honorably discharged on June 30 of the fiscal year in which he is considered as having failed of selection for promotion to the grade of lieutenant commander . . . for the second time."

and 10 U.S.C. § 6401

"(a) Each woman officer on the active list of the Navy, appointed under section 5590 of this title, who holds a permanent appointment in the grade of lieutenant . . . shall be honorably discharged on June 30 of the fiscal year in which—

(1) she is not on a promotion list; and

(2) she has completed 13 years of active commissioned service in the Navy . . . ."

*Ballard's Contentions:*

Ballard filed his complaint herein on June 16, 1972, wherein he contended, inter alia, that:

(a) If discharged on June 30th next pursuant to the provisions of Section 6382 he would be caused very substantial monetary damage through the loss of retirement benefits to which he would be entitled on or about January 1, 1975, and further, that he would suffer irreparable damage to his Naval career through the unequal treatment and protection of the laws of the United States;

(b) Section 6401 grants female officers a minimum tenure term of 13 years commissioned service before mandatory discharge thereunder and Section 6382 grants male officers in like grade and situation no tenure;

(c) He is being discharged pursuant to Section 6382 without the benefit of 13 years service, accordingly, the section "discriminates against him because of his sex when compared to . . . Section 6401 which applies to women [in like grade and situation] and that this deprives [him] of a benefit solely because of his sex," all violative of the equal treatment and protection clause of the Fourteenth Amendment to the United States Constitution; and

(d) Further, he is being otherwise denied his constitutional rights under the due process clause of the Fifth Amendment to the United States Constitution.

*Relief:*

Ballard sought temporary restraining order and permanent declaratory and injunctive relief from the threatened discharge, and on June 20, 1972, the Honorable Edward J. Schwartz, District Judge of this District, issued herein the requested temporary restraining order. Thereafter, this three-judge District Court was convened and upon hearing the parties, denied several motions of the defendants and continued the temporary restraining order in effect. On October 25, 1972, this three-judge court entered its Memorandum, Ballard v. Laird, et al., 350 F.Supp. 167, directing the is-

suance of a preliminary injunction enjoining the discharge of Ballard pursuant to Section 6382 until final determination and set a date certain for final hearing of the cause on its merits.

On March 8, 1973, we heard the parties on motions putting the cause to us on its merits, received into evidence further written agreement of facts, documents and affidavits offered by the parties and took the cause under submission.

## FINDINGS OF FACT

This court made findings of fact upon the evidence then submitted and stated reasons for its conclusions in the Memorandum. Those reasons are again made and stated herein by reference and findings of fact of the Memorandum repeated as follows:

We find that plaintiff:

1. Is a Lieutenant in the U.S. Navy and has been a commissioned officer since August 16, 1962, for a total of more than nine years continuous active commissioned service. Prior to commission, he served seven years as an enlisted man.

2. Has served with distinction in the U.S. Navy and with overall outstanding fitness reports. In all of his fitness reports he has been recommended for promotion.

3. Was scheduled to be discharged and would have been, but for the restraining order, on June 30th last, from the naval service for the sole reason that plaintiff had not been promoted to Lt. Commander during the nine years and ten and one-half months that plaintiff has been in active commissioned service as required by Sec. 6382, supra.

4. If discharged as of June 30th, last, will receive severance pay of approximately $15,000, as opposed to approximately $200,000 of benefits which would accrue to him if allowed to serve in commissioned status at least thirteen years.

In addition, we find that:

As of March 8, 1973, Ballard had increased his continuous commissioned service to a total of 10 calendar years, 6 calendar months and 22 days, and that the service of Ballard utilized under the restraining orders had been of high merit and much value to the USN;

The threatened USN order of discharge, under restraint, as aforesaid, continues to be implemented and based solely upon the mandatory discharge provisions of Section 6382; and

No woman USN officer has been heretofore discharged from commissioned service pursuant to the provisions of Section 6382.

## DISCUSSION

We reach Ballard's claims of unequal and discriminatory treatment arising from the enforcement of the mandatory discharge requirements of Section 6382 under the due process clause of the Fifth Amendment to the United States Constitution.

"[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884." Schneider v. Rusk, 377 U.S. 163 (1964), at 168, 84 S.Ct. 1187 at 1190, 12 L.Ed.2d 218 (favoring native born over naturalized citizens).

*Bolling* tells us that "[w]e have this day held that the Equal Protection Clause of the Fourteenth Amendment prohibits the states from maintaining racially segregated public schools." "[T]he concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive," 347 U.S. at 499, 74 S. Ct. at 694. So, "[i]n view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government," at 500, 74 S.Ct. at 695, under the due process clause.

There is no evidence before us nor is it contended by the defendants that "having failed of selection for promotion" or "is not on a promotion list" is necessarily related to quality of service on the part of the officer, male or female, nor do the mandatory discharge provisions respectively involve in any manner the exercise of USN command function or policy governing the promotion and discharge, for cause, of any USN commissioned officer. Accordingly, as noted in the Memorandum, such authorities as Beard v. Stahr, 200 F. Supp. 766 (D.C.1961), and Struck v. Secretary, 460 F.2d 1372 (9th Cir. 1972), cert. granted and remanded, 409 U.S. 947, 1071, 93 S.Ct. 292, 676, 34 L. Ed.2d 217, 660 (1972), are distinguishable and of no concern to us.

The mandatory discharge provisions of each of the sections are pure and simple legislative dictates and commands of an administrative or fiscal character and policy. In the Memorandum we spoke of the inbalance of supply and demand of commissioned officers caused by the rise and ebb of national emergencies and of the taxing of command decision and function in the acceleration and deferring of the time intervals of promotion caused thereby.

It is the result of this inbalance that placed Ballard in the grade of lieutenant prior to the time lapse of the norm of prescribed promotion intervals and kept him in that grade for the two passovers. Thus was created the surplus of some 238 USN lieutenants who were subject to Section 6382 discharge on June 30, 1972, all for the lack of vacancies in the grade of lieutenant commander.

We deem the mandatory discharge provisions of Section 6382 to be legislative fiscal outlay saving devices for the weeding out of a surplus of USN officers in a given grade before the vesting of retirement benefits. We acknowledge that no constitutional quarrel can be made over such a legislative policy per se. Yet, the Memorandum anticipated and we now see a constitutional ban against the built-in invidious discriminatory application of the legislative mandatory discharge provisions of the statutes which favor the members of one sex over the other.

Congress gave the judiciary the vehicle of the civil rights act to facilitate the destruction of sex discriminatory practice in private business. Diaz v. Pan American Western Airway, 442 F. 2d 385 (5th Cir. 1971), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (female preference in employment); Rosen v. Public Service Electric and Gas Co., 3rd Circuit, 477 F.2d 90, 1973 (female preference in retirement plan); Eslinger v. Thomas, 4th Circuit, 476 F. 2d 225, 1973 (male preference in appointment of state senate pages).

Here we are sought to utilize and implement the self-executing due process clause to destroy the governmental sex discriminatory practice sponsored by the two statutes.

In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the court had under challenge of equal protection clause infringement a state statute giving mandatory preference to male over female applicants, without regard to their individual qualification (sole basis of sex), for appointment as administrator of decedent's estates. In short, the court thought the statute provided "dissimilar treatment for men and women who are . . . similarly situated," at 77, 92 S.Ct. at 254 and "thus establishes a classification subject to scrutiny under the Equal Protection Clause," at 75, 92 S.Ct. at 253. The court held the state's interest (reducing the work load on probate courts) "is not without some legitimacy," but is "inconsistent with the command of the equal protection clause." "To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment," at 76, 92 S.Ct. at 254.

As were the discriminatory business and state practices involved in those cases, so is the challenged government's practice under the two sections under challenge here. The plain reading of the two sections when applied gives the female officers a guaranteed tenure term of 13 years commissioned service, except, of course, for a discharge for cause, and male officers, similarly situated, no such guaranteed tenure of service within which time to achieve the required grade and forestall the mandatory discharge.

Controlling our decision now is Frontiero v. Secretary, United States Supreme Court, 1973, 411 U.S. 677, 93 S. Ct. 1764, 36 L.Ed.2d 583.

Mrs. Frontiero was a member of the uniformed services. In order to obtain "dependent" increased quarters allowance and medical expense benefits allowable under a set of statutes she was required to show in fact that her husband was dependent upon her for over one-half of his support. Under those statutes a male in the service could claim his wife as a "dependent" whether or not she was in fact dependent upon him for any part of her support. She claimed due process clause infringement arising from the required application and actual support showing procedures.

The court in Frontiero located the fount of its rationale in the teachings of Reed, supra, and quickly concluded that

"classifications based upon sex, like classifications based upon race, alienage, and national origin, are inherently suspect and must therefore be subjected to close judicial scrutiny,"

under the due process clause of the Fifth Amendment:

We paraphrase Frontiero's main claim of lack of due process under the law to fit Ballard's claim of discriminatory treatment, i. e., Frontiero "asserted that the discriminatory impact of the statutes is two-fold: First, . . . [de-

monstration of dependency] ; and second, as a substantive matter, a [female] member [is granted tenure in service] while a similarly situated [male] member is denied such benefits."

Whether the discriminatory impact results in favoring the female rather than the male is no logical differential in the utilization of the teachings of Frontiero. Diaz, supra, and Rosen, supra, each found no handicap in striking down female favoritism under the civil rights act—a legislative implement of the equal protection clause, nor do we here in a judicial implementation of the equal protection clause.

Nor do we see any logical reason for a different consideration and treatment because the asserted discriminatory impact and result arises from the combined wording and application of two separate statutes rather than from the wording and application of an interlocking set or single statute.[1]

The court in Frontiero had no difficulty in placing women on an equal footing with men in military service benefits. The USN goes further, as it is common knowledge that a woman with the grade of captain has been detailed to line command. News releases of USN command policy in evidence dispels any concept of inability between the sexes, per se, to serve in command detail. See note 2 in the Memorandum.

The defendants here attempt to justify the apparent discriminatory impact and force of the statutes through an asserted rational basis for the tenure granted females. There is no evidence of any facts supporting such a rational basis, moreover such a test is improperly asserted. For here, we are faced with an "inherently suspect" classification, and such classifications "are unconstitutional unless the State can demonstrate that such laws are 'necessary to promote a compelling governmental interest.'" Dunn v. Blumstein, 405 U.S. 330 at 342,

---

1. It has been suggested that the 13 year tenure of commission service offered to women under Section 6401 was a recruiting measure. If so, the invidious discriminatory impact is compounded.

648

92 S.Ct. 995 at 1003, 31 L.Ed.2d 274 (1972); Frontiero, supra, and Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

As noted above, the mandatory discharge provisions of each of the sections are in the furtherance of governmental administrative or fiscal policy, but just what governmental administrative, fiscal interest or savings are served by granting female officers 13 years tenure in service and male officers none is not shown. We assume, without deciding, that some does exist, nevertheless, *Reed* and *Frontiero*, each, held that government "interest of some legitimacy" does not survive a judicial scrutiny and detection of an invidious discriminatory practice. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), holds that the alleviation of fiscal expense is not such a compelling state interest to justify infringement of due process, nor is such fiscal concern such a compelling state interest as to justify infringement of equal protection rights, *Shapiro,* supra. We see no logical reason why the government's interests should not be measured by the same yardstick.

## CONCLUSIONS OF LAW

We apply the full thrust of the rationale of *Frontiero* and conclude that:

■■ (a) The legislative guaranteed tenure time of commissioned service granted to women under Section 6401 is an inherently suspect classification;

(b) The effect of the tenure provision of Section 6401 in favor of the female USN officers is an invidious discriminatory practice against male USN officers who are mandatorily discharged under similar conditions before 13 years of commissioned service;

(c) The statutory scheme effectuating that discriminatory practice is constitutionally invalid under the due process clause insofar as the same authorizes and directs the mandatory discharge of male USN officers prior to the expira-

tion of 13 years of commissioned service; and

(d) The defendants, and their successors in their respective official capacities, should be:

(1) permanently enjoined and restrained from mandatorily discharging Ballard solely because of passovers in grade as provided for in Section 6382 prior to the expiration of 13 years of commissioned service, and

(2) Ballard should be reinstated to all benefits, increments and placement on the USN list for promotion as he would have been entitled to under law as of the close of June 29, 1972, had he not been considered subject to discharge short of 13 years of continuous USN commissioned service.

This opinion shall constitute this three-judge court's findings of fact and conclusions of law as provided for in Rule 52(a) F.R.Civ.P.