# SCHLESINGER, SECRETARY OF DEFENSE, ET AL. *v.* BALLARD

No. 73–776.   Argued October 15, 1974—Decided January 15, 1975

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post*, p. 511. WHITE, J., filed a dissenting statement, *post*, p. 521.

· *Harriet S. Shapiro* argued the cause for appellants. On the briefs were *Solicitor General Bork, Assistant Attorney General Hills, Deputy Solicitor General LaFontant, Edmund W. Kitch, Robert E. Kopp,* and *Michael Kimmel.*

*Charles R. Khoury, Jr.,* argued the cause for appellee. With him on the brief was *Morris S. Dees, Jr.*

MR. JUSTICE STEWART delivered the opinion of the Court.

Appellee Robert C. Ballard is a lieutenant in the United States Navy. After more than nine years of active service as a commissioned officer, he failed, for a second time, to be selected for promotion to the grade of lieutenant commander, and was therefore subject to mandatory discharge under 10 U. S. C. § 6382 (a).[1] He

---

[1] Title 10 U. S. C. § 6382 provides:

"(a) Each officer on the active list of the Navy serving in the grade of lieutenant, except an officer in the Nurse Corps, and each officer on the active list of the Marine Corps serving in the grade of captain shall be honorably discharged on June 30 of the fiscal year in which he is considered as having failed of selection for promotion to the grade of lieutenant commander or major for the second time. However, if he so requests, he may be honorably discharged at any time during that fiscal year.

·      ·      ·      ·      ·

· "(d) This section does not apply to women officers appointed under section 5590 of this title or to officers designated for limited duty."

Ballard's scheduled discharge carried with it an entitlement to a "lump-sum" severance payment of approximately $15,000, 10 U. S. C. · § 6382 (c), but would have terminated Ballard's total service time

brought suit in federal court claiming that if he had been a woman officer, he would have been subject to a different separation statute, 10 U. S. C. § 6401, under which he would have been entitled to 13 years of commissioned service before a mandatory discharge for want of promotion.[2] He claimed that the application of § 6382 to him, when compared with the treatment of women officers subject to § 6401, was an unconstitutional discrimination based on sex in violation of the Due Process Clause of the Fifth Amendment.[3]

The District Judge issued a temporary restraining order prohibiting Ballard's discharge. Subsequently, a three-judge District Court was convened to hear the claim pursuant to 28 U. S. C. §§ 2282, 2284. After hearings upon motions by the Government defendants, that court issued a preliminary injunction against Ballard's discharge.

(including seven years of enlisted service) short of the 20 years of service necessary for substantially greater retirement benefits.

[2] Title 10 U. S. C. § 6401 (a) provides:

"Each woman officer on the active list of the Navy, appointed under section 5590 of this title, who holds a permanent appointment in the grade of lieutenant and each woman officer on the active list of the Marine Corps who holds a permanent appointment in the grade of captain shall be honorably discharged on June 30 of the fiscal year in which—

"(1) she is not on a promotion list; and

"(2) she has completed 13 years of active commissioned service in the Navy or in the Marine Corps.

"However, if she so requests, she may be honorably discharged at any time during that fiscal year."

[3] The Fifth Amendment to the Constitution of the United States provides in pertinent part that no person shall "be deprived of life, liberty, or property, without due process of law." Although it contains no Equal Protection Clause as does the Fourteenth Amendment, the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is "so unjustifiable as to be violative of due process." *Bolling* v. *Sharpe,* 347 U. S. 497, 499. See also *Schneider* v. *Rusk,* 377 U. S. 163, 168.

350 F. Supp. 167. Thereafter, the case came before the three-judge court for decision on the merits. Relying upon *Frontiero* v. *Richardson*, 411 U. S. 677, and concluding that the challenged mandatory-discharge provisions are supported solely by considerations of fiscal and administrative policy, the court held that § 6382 is unconstitutional because the 13-year tenure provision of § 6401 discriminates in favor of women without sufficient justification. 360 F. Supp. 643. Accordingly, the court enjoined the Navy from discharging Ballard for failure to be promoted to the grade of lieutenant commander before the expiration of 13 years of commissioned service. *Id.*, at 648. We noted probable jurisdiction of this appeal from that injunctive order. 415 U. S. 912. See 28 U. S. C. § 1253.

I

At the base of the system governing the promotion and attrition of male line officers in the Navy is a congressional designation of the authorized number of the Navy's enlisted personnel, 10 U. S. C. § 5401, and a correlative limitation upon the number of active line officers as a percentage of that figure. § 5403.[4] Congress has also established the ratio of distribution of line officers in the several grades above lieutenant in fixed proportions to the total number of line officers. §§ 5442, 5447 (a).

The Secretary of the Navy is required periodically to convene selection boards to consider and recommend for promotion male line officers in each of the separate ranks, § 5701, and must provide the boards so convened with the number of male line officers that may be recom-

---

[4] Similarly, the authorized strength of the Supply Corps and the Civil Engineers Corps is established in set proportions to the authorized number of line officers. 10 U. S. C. § 5404 (a). More complicated formulas set the bounds for the numbers of staff officers in other corps. *E. g.*, § 5404 (b).

mended for promotion to the next higher grade. § 5756. Eligible officers are then recommended for promotion by the selection boards, based upon merit, and are placed on a promotion list and promoted in due course as vacancies occur in the higher ranks. § 5769. Because the number of lieutenant commanders is set by statute, the number of lieutenants, like Ballard, who may be recommended for promotion and placed on a promotion list in any year depends upon the number of vacancies existing and estimated for the coming year in the rank of lieutenant commander. § 5756.

Wholly separate promotion lines are established for the various categories of officers. Thus, in addition to the selection boards that are convened to review the promotion of male line officers, different selection boards are convened to recommend for promotion staff corps officers (except for women officers appointed under § 5590), § 5702, male officers in the Marine Corps, § 5703, women line officers, § 5704 (a), and women staff officers who are appointed under § 5590. § 5704 (b). The convening of these separate selection boards permits naval officers within each category to be considered for promotion in comparison with other officers with similar opportunities and experience.

Because the Navy has a pyramidal organizational structure, fewer officers are needed at each higher rank than are needed in the rank below. In the absence of some mandatory attrition of naval officers, the result would be stagnation of promotion of younger officers and disincentive to naval service. If the officers who failed to be promoted remained in the service, the promotion of younger officers through the ranks would be retarded. Accordingly, a basic "up or out" philosophy was developed to maintain effective leadership by heightening competition for the higher ranks while providing junior

officers with incentive and opportunity for promotion. It is for this reason, and not merely because of administrative or fiscal policy considerations, that § 6382 (a) requires that lieutenants be discharged when they are "considered as having failed of selection for promotion to the grade of lieutenant commander . . . for the second time." [5] Similar selection-out rules apply to officers in different ranks who are twice passed over for promotion.[6]

The phrase "failed of selection for promotion" in § 6382 (a) is a statutory term of art. It does not embrace all eligible officers who have been considered and not selected for promotion. Before an officer is considered to have failed of selection for the first time, he must have been placed within a "promotion zone" established by the Secretary of the Navy. The Secretary each year establishes "promotion zones" of officers who will either be selected for promotion to the next higher grade or who will be considered to have failed of selection for promotion for the first time. See §§ 5764, 5776. The number of officers in the zones, established for each grade, is set at a level to ensure a flow of promotions consistent with the appropriate terms of service in each grade, see § 5768, and to provide opportunity for promotion of others in succeeding years. The number

---

[5] See S. Rep. No. 2120, 75th Cong., 3d Sess., 4. Parts of the Officer Personnel Act of 1947 that affected naval officers were codified in 10 U. S. C. § 5401 *et seq.*, by the Act of Aug. 10, 1956, 70A Stat. 297. Title 10 U. S. C. § 6382 (a) is a codification of § 312 (h) of the Officer Personnel Act of 1947, 61 Stat. 860, and that section was based, in turn, on § 12 (c) of the Act of June 23, 1938, 52 Stat. 949.

[6] Title 10 U. S. C. § 6382 (b) calls for the mandatory discharge of lieutenants (junior grade) who twice fail to be selected for promotion to the grade of lieutenant. In the grades above lieutenant, statutory provisions require the mandatory retirement, instead of discharge, of officers twice passed over for promotion. 10 U. S. C. §§ 6376, 6379, 6380.

of officers within each zone is thus based on "a consideration of the number of vacancies estimated for the next higher grade in each of the next five years, the number of officers who will be eligible for selection in each of those years, and the terms of service that those officers will have completed." § 5764 (a).

Section 6401 is the mandatory-attrition provision that applies to women officers appointed under § 5590, including all women line officers and most women officers in the Staff Corps.[7] It provides for mandatory discharge of a woman officer appointed under § 5590 when she "is not on a promotion list"[8] and "has completed 13 years of active commissioned service in the Navy." § 6401. Section 6401 was initially intended approximately to equate the length of service of women officers before mandatory discharge for want of promotion with that of male lieutenants discharged under § 6382 (a).[9] Subsequently, however, Congress

---

[7] Section 6401 does not apply to women officers, appointed pursuant to 10 U. S. C. §§ 5574, 5578, 5578a, and 5579, who are in the Medical, Dental, Judge Advocate General's, and Medical Service Corps. These women staff officers are, like male officers, subject to § 6382 (a).

[8] The reason for the "not on a promotion list" language of § 6401, as contrasted with the "failed of selection" language of § 6382 (a), is in part historical. Section 6401 was enacted as § 207 (j) of the Women's Armed Services Integration Act of 1948, 62 Stat. 368. The "promotion zone" system was not established for women appointed under § 5590 until 1967. Pub. L. 90–130, 81 Stat. 374 (1967). See § 5764 (d).

[9] See Hearings on S. 1527 before the Senate Committee on Armed Services (subsequently S. 1641), 80th Cong., 1st Sess., 39. Although the statutory *eligibility* periods for promotion through the ranks to lieutenant commander is somewhat shorter, § 5751 (b), the *normal* time in service as an ensign, lieutenant (junior grade), and lieutenant is 12 years under peacetime conditions. § 5768 (a). Accordingly, a male line officer who had achieved the rank of lieutenant would typically have completed 12 years of service before

specifically recognized that the provisions of § 6401 would probably result in longer tenure for women lieutenants than for male lieutenants under § 6382. When it enacted legislation eliminating many of the former restrictions on women officers' participation in the naval service in 1967,[10] Congress expressly left undisturbed the 13-year tenure provision of § 6401. And both the House and the Senate Reports observed that the attrition provisions governing women line officers would parallel "present provisions with respect to male officers *except that the discharge of male officers probably occurs about 2 years earlier.*" S. Rep. No. 676, 90th Cong., 1st Sess., 12; H. R. Rep. No. 216, 90th Cong., 1st Sess., 17 (emphasis added).[11]

## II

It is against this background that we must decide whether, agreeably to the Due Process Clause of the

being considered for the rank of lieutenant commander, and would have completed 13 years of service before being passed over twice for promotion to the grade of lieutenant commander.

[10] See Pub. L. 90–130, 81 Stat. 374 (1967). This Act repealed numerical and percentage restrictions on women officers in certain grades, removed restrictions on permanent appointment of women officers to the rank of captain, and authorized women officers under certain circumstances to be eligible for flag rank. Congress also established a "promotion zone" system for women officers and indicated that the promotion and attrition of female officers were generally to correspond to the treatment of male officers. S. Rep. No. 676, 90th Cong., 1st Sess., 2.

[11] According to the brief of the Solicitor General, the tenure differential has since been increased by the removal of time-in-grade restrictions and accelerated promotions resulting from the Vietnam conflict. See Exec. Order No. 11437, Dec. 2, 1968, 3 CFR 754 (1966–1970 Comp.). Thus in recent years the discharge of male officers under § 6382 (a) may have occurred about four years earlier than the discharge of women officers under § 6401, instead of the two years' difference acknowledged by Congress in 1967.

Fifth Amendment, the Congress may accord to women naval officers a 13-year tenure of commissioned service under § 6401 before mandatory discharge for want of promotion, while requiring under § 6382 (a) the mandatory discharge of male lieutenants who have been twice passed over for promotion but who, like Ballard, may have had less than 13 years of commissioned service. In arguing that Congress has acted unconstitutionally, appellee relies primarily upon the Court's recent decisions in *Frontiero* v. *Richardson,* 411 U. S. 677, and *Reed* v. *Reed,* 404 U. S. 71.

In *Frontiero* the Court was concerned with "the right of a female member of the uniformed services to claim her spouse as a 'dependent' for the purposes of obtaining increased quarters allowances and medical and dental benefits under 37 U. S. C. §§ 401, 403, and 10 U. S. C. §§ 1072, 1076, on an equal footing with male members." 411 U. S., at 678. Under the governing statutes, a serviceman could automatically claim his spouse as a "dependent," but a servicewoman's male spouse was not considered to be a "dependent" unless he was shown in fact to be dependent upon his wife for more than one-half of his support. The challenged classification was based exclusively on gender, and the Government conceded that the different treatment of men and women service members was based solely upon considerations of administrative convenience. The Court found this disparity of treatment constitutionally invalid. In the words of the plurality opinion:

> "[A]ny statutory scheme which draws a sharp line between the sexes, *solely* for the purpose of achieving administrative convenience, necessarily commands 'dissimilar treatment for men and women who are . . . similarly situated,' and therefore involves the 'very kind of arbitrary legislative

choice forbidden by the [Constitution] . . . .' *Reed* v. *Reed*, 404 U. S., at 77, 76. We therefore conclude that, by according differential treatment to male and female members of the uniformed services for the sole purpose of achieving administrative convenience, the challenged statutes violate the Due Process Clause of the Fifth Amendment insofar as they require a female member to prove the dependency of her husband." *Id.*, at 690–691.

The case of *Reed* v. *Reed, supra,* involved quite similar considerations. In that case the Court considered the constitutionality of an Idaho probate code provision that, in establishing who would administer a decedent's estate, gave a "mandatory" preference to men over women when they were in the same degree of relationship to the decedent. The Idaho law permitted no consideration of the individual qualifications of particular men or women as potential administrators, but simply preferred males in order to reduce probate expenses by eliminating contests over the relative qualifications of men and women otherwise similarly situated. The Court held that "[b]y providing dissimilar treatment for men and women who are thus similarly situated, the challenged section violates the Equal Protection Clause." 404 U. S., at 77.

In both *Reed* and *Frontiero* the challenged classifications based on sex were premised on overbroad generalizations that could not be tolerated under the Constitution. In *Reed,* the assumption underlying the Idaho statute was that men would generally be better estate administrators than women. In *Frontiero,* the assumption underlying the Federal Armed Services benefit statutes was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of servicewomen would not.

In contrast, the different treatment of men and women naval officers under §§ 6382 and 6401 reflects, not archaic and overbroad generalizations, but, instead, the demonstrable fact that male and female line officers in the Navy are *not* similarly situated with respect to opportunities for professional service. Appellee has not challenged the current restrictions on women officers' participation in combat and in most sea duty. Specifically, "women may not be assigned to duty in aircraft that are engaged in combat missions nor may they be assigned to duty on vessels of the Navy other than hospital ships and transports." 10 U. S. C. § 6015. Thus, in competing for promotion, female lieutenants will not generally have compiled records of seagoing service comparable to those of male lieutenants. In enacting and retaining § 6401, Congress may thus quite rationally have believed that women line officers had less opportunity for promotion than did their male counterparts, and that a longer period of tenure for women officers would, therefore, be consistent with the goal to provide women officers with "fair and equitable career advancement programs." H. R. Rep. No. 216, *supra,* at 5. Cf. *Kahn* v. *Shevin,* 416 U. S. 351.[12]

---

[12] The dissenting opinion argues that, in retaining § 6401 in 1967, Congress may not have intended to give a longer tenure to women line officers than to their male counterparts, because "it is certainly plausible to conclude that Congress continued to believe, as it had in 1948, that the separation provisions for men and women would, given the opportunity to work properly, result in equal average tenure for both sexes." *Post,* at 517. This conclusion cannot, however, be reconciled with Congress' recognition that mandatory retirement provisions for women line officers "parallel present provisions with respect to male officers *except that the discharge of male officers probably occurs about 2 years earlier.*" S. Rep. No. 676, *supra,* at 12; H. R. Rep. No. 216, 90th Cong., 1st Sess., 17 (emphasis added). Alternatively, the dissent seems to imply that the "anomalous" retention in 1967 of the 13-year tenure provision of § 6401 may have resulted from congressional inadvertence. *Post,* at 514–515. But this

The complete rationality of this legislative classification is underscored by the fact that in corps where male and female lieutenants *are* similarly situated, Congress has not differentiated between them with respect to tenure. Thus women staff officers not appointed under § 5590 are subject to the same mandatory attrition rule of § 6382 (a) as are male officers. These include officers in the Medical, Dental, Judge Advocate General's, and Medical Service Corps. See 10 U. S. C. §§ 5574, 5578, 5578a, 5579. Conversely, active male lieutenants who are members of the Nurse Corps, like female lieutenants in that Corps, are within the ambit of 10 U. S. C. § 6396 (c), which contains a 13-year tenure provision like § 6401.

---

view cannot be squared with the legislative history either. A major factor prompting the 1967 amendments was Congress' express concern that unless restrictions on promotions of women naval officers were lifted, the operation of § 6401 would cause excessive forced retirement of women lieutenants. In discussing the problem, the House Report explicitly described the 13-year provision:

"A particularly severe problem of promotion stagnation exists among WAVE officers in the Navy. The present grade limitations on promotion of WAVE officers to the grades of commander-lieutenant commander have so reduced the vacancies that the Navy will be forced to discharge most regular WAVE lieutenants when they reach their 13th year of service if relief is not provided.

.          .          .          .          .

"Present law (sec. 6401, title 10, United States Code) provides that women officers on the active list of the Navy in the grade of lieutenant must be discharged on June 30 of the fiscal year in which they complete 13 years of active commissioned service if not on a promotion list that year. The Navy estimates that without legislative relief, the attrition among women line lieutenants will average 50 percent or more over the next 5 years. The Navy considers such heavy attrition unacceptable." H. R. Rep. No. 216, *supra*, at 6.

It is thus clear that Congress in 1967 intentionally retained the 13-year tenure provision of § 6401, and did so with specific knowledge that it gave women line officers a longer tenure than their male counterparts.

In both *Reed* and *Frontiero* the reason asserted to justify the challenged gender-based classifications was administrative convenience, and that alone.  Here, on the contrary, the operation of the statutes in question results in a flow of promotions commensurate with the Navy's current needs and serves to motivate qualified commissioned officers to so conduct themselves that they may realistically look forward to higher levels of command.  This Court has recognized that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise."  *Toth* v. *Quarles,* 350 U. S. 11, 17.  See also *Orloff* v. *Willoughby,* 345 U. S. 83, 94.  The responsibility for determining how best our Armed Forces shall attend to that business rests with Congress, see U. S. Const., Art. I, § 8, cls. 12–14, and with the President.  See U. S. Const., Art. II, § 2, cl. 1.  We cannot say that, in exercising its broad constitutional power here, Congress has violated the Due Process Clause of the Fifth Amendment.[13]

The judgment is reversed.

---

[13] We observe that because of the restrictions that were removed from women officers' participation in naval service in 1967, see Act of Nov. 8, 1967, 81 Stat. 374; S. Rep. No. 676, 90th Cong., 1st Sess., more opportunity has become available for women officers. We are told by the Solicitor General that since 1967, the Secretary of the Navy has implemented a program for acceleration of women officers' promotion and that today women are being considered for promotion within the same time periods as are men.  Apparently believing that the need for a tenure differential has subsided, the Department of Defense has submitted a bill to Congress that would substitute for § 6401 the same rule that governs male lieutenants.  See §§ 2 (5) and 4 (18)(L) of H. R. 12405 (93d Cong., 2d Sess.), which contains a new provision as a proposed replacement of both § 6382 and § 6401.  These developments no more than reinforce the view that it is for Congress, and not for the courts, to decide when the policy goals sought to be served by § 6401 are no longer necessary to the Navy's officer promotion and attrition programs.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUG-
LAS and MR. JUSTICE MARSHALL join, dissenting.

The Court concludes that the statutory scheme which
results in different periods of tenure for male and female
line lieutenants of the Navy does not contravene the Due
Process Clause of the Fifth Amendment because "Con-
gress may . . . quite rationally have believed that women
line officers had less opportunity for promotion than did
their male counterparts, and that a longer period of
tenure for women officers would, therefore, be consistent
with the goal to provide women officers with 'fair and
equitable career advancement programs.'" *Ante*, at 508.
I believe, however, that a legislative classification that
is premised solely upon gender must be subjected to close
judicial scrutiny. *Frontiero* v. *Richardson*, 411 U. S. 677
(1973); *Kahn* v. *Shevin*, 416 U. S. 351 (1974) (BRENNAN,
J., dissenting). Such suspect classifications can be sus-
tained only if the Government demonstrates that the clas-
sification serves compelling interests that cannot be other-
wise achieved. Here, the Government as much as concedes
that the gender-based distinctions in separation pro-
visions for Navy officers fulfill no compelling purpose.

Further, the Court goes far to conjure up a legislative
purpose which *may* have underlain the gender-based dis-
tinction here attacked. I find nothing in the statutory
scheme or the legislative history to support the supposi-
tion that Congress intended, by assuring women but not
men line lieutenants in the Navy a 13-year tenure, to
compensate women for other forms of disadvantage
visited upon them by the Navy.[1] Thus, the gender-

---

[1] Indeed, I find quite troublesome the notion that a gender-
based difference in treatment can be justified by another, broader,
gender-based difference in treatment imposed directly and currently
by the Navy itself. While it is true that the restrictions upon
women officers' opportunities for professional service are not here
directly under attack, they are obviously implicated on the Court's

based classification of which appellee complains is not related, rationally or otherwise, to any legitimate legislative purpose fairly to be inferred from the statutory scheme or its history, and cannot be sustained.

I

As the Court recounts, § 6401 was enacted as part of the Women's Armed Services Integration Act of 1948, 62 Stat. 368. This Act, while providing for the first time a permanent role for women in the military, severely limited their career opportunities. Among other things, it provided that women in the Navy could not be permanently promoted above the rank of commander, and it set the number of women lieutenants, lieutenant commanders, and commanders at a small percentage of the number of regular women officers on active duty. Perhaps because these limitations upon promotion opportunities made it impractical to guarantee women line officers promotion at any uniform rate, the promotion zone system provided for men by the Officer Personnel Act of 1947, 61 Stat. 860, was not applied to them. And, as explained by the Court, without a promotion zone system, the basis for determining involuntary separation under § 6382 (a), whether an officer has twice "failed of selection for promotion," has no meaning.[2] Therefore,

_____

chosen ground for decision, and the Court ought at least to consider whether they *may* be valid before sustaining a provision it conceives to be based upon them.

[2] Also, even if it were possible to devise some alternative way of deciding when a woman officer had "failed of selection for promotion," the limitation upon promotion opportunities for women meant that retention until two failures of selection could have been indefinite retention. In 1967, in fact, the statutory grade limitations upon promotions for women had produced such limited vacancies in the upper ranks that, but for the fact that some of the limitations were removed by the 1967 Act, promotions of lieutenants in the WAVES would have had to be suspended altogether for four or five

the separation provisions for women line officers, given the rest of the statutory provisions applicable to them, had to be pegged to time served rather than to opportunities for promotion. The number of years selected for women line lieutenants, 13, corresponded exactly to the normal number of years Congress intended to precede separation for a male officer not chosen for promotion. See *ante,* at 504–505, n. 9.[3]  Thus, Congress' original purpose in enacting slightly different separation provisions for men and women is quite certain—to create the *same* tenure in years for women lieutenants as for the average male lieutenant before involuntary separation was permitted.

However, for reasons not entirely clear upon the record in this case, the promotion zone system for men did not, as administered by the Navy, result in the normal 13-year tenure for men before involuntary separation contemplated by §§ 5764 and 5768.[4]  Rather, in 1967 the

years. H. R. Rep. No. 216, 90th Cong., 1st Sess., 6 (1967). See Hearings on H. R. 5894 before Subcommittee No. 1 of the House Committee on Armed Services, 90th Cong., 1st Sess., 384 (1967). If involuntary separation had been keyed to failure of selection, no WAVE line lieutenants could have been separated during those five years.

[3] Section 5768 sets out the normal times of service for male officers in the line of the Navy. Section 5764, the section establishing the promotion zone system, specifies that the number of officers in the promotion zone each year shall be chosen "in order to maintain a flow of promotion consistent with the terms of service set out in section 5768 . . . and in order best to assure to individuals in succeeding years equality of opportunity for promotion." Thus, the "normal terms of service," § 5768, were to be achieved through the administrative determination of promotion zones each year.

[4] The explanation seemingly lies in the provisions permitting suspension of these sections. Section 48 of the Act of Aug. 10, 1956, provided that:

"(a) Except as they may apply to women officers of the Regular Navy . . . appointed under section 5590 of title 10, . . . the following

normal tenure for men seems to have been about 11 years, see H. R. Rep. No. 216, 90th Cong., 1st Sess., 17; S. Rep. No. 676, 90th Cong., 1st Sess., 12; and in 1972, when respondent was due for discharge, it was. eight or nine years. Brief for Appellants 16.

In 1967, Congress decided to eliminate many of the provisions restricting career opportunities for women. In doing so it wished, as the Court notes, to provide women with "fair and equitable career advancement programs." H. R. Rep. No. 216, *supra*, at 5. However, contrary to the Court's assumption, Congress determined to achieve this goal, not by providing special compensatory treatment for women, but by removing most of the restrictions upon them and then subjecting them to the *same* provisions generally governing men. *Id.,* at 3; S. Rep. No. 676, *supra*, at 2.

*First,* the entire structure of the 1967 Act is directed toward assimilating as much as possible the promotion structure for women line officers to that of men. The Act, for example, provided for a promotion zone system for women line officers in the Navy, 10 U. S. C. § 5764 (d), and applied the "failure of selection" designation to

___

sections of title 10 cease to operate whenever the number of male officers serving on active duty in the grade of ensign or above in the line of the Navy does not exceed the number of male officers holding permanent appointments in the grade of ensign or above on the active list in the line of the Regular Navy: Sections . . . 5764–5770 . . . ." 70A Stat. 639.

Also, 10 U. S. C. § 5785 provides that:

"(b) During a war or national emergency, the President may suspend any provision of the preceding sections of this chapter relat-. ing to officers of the Navy . . . , other than women officers appointed under section 5590 of this title."

Because these sections do not apply to women covered by § 6401, any suspensions could have the effect of shortening normal tenure for men without affecting the tenure of women. See *ante,* at 505 n. 11.

women by amending 10 U. S. C. § 5776.[5] These additions make the retention of 13-year tenure for women line lieutenants somewhat anomalous, since the "failure of selection" designation appears to have no function except as an aid to determining involuntary separation. Thus, as the hesitant language the Court uses in describing Congress' possible compensatory purpose recognizes, it is impossible to divine from the structure of the Act itself a reason for retaining the 13-year tenure for women but not for men.

*Second*, the legislative history of the 1967 Act makes quite clear that Congress' purpose in retaining the 13-year tenure for women line lieutenants was *not* to take account of the limited opportunities available to women in the Navy. Congress explicitly recognized that

---

[5] Other examples of the degree to which women officers were subjected to the same promotion and retention system as men are:

(1) The amendment of 10 U. S. C. § 5771 so that women officers on a promotion list, like men, can be promoted as soon as vacancies occur. This was done to prevent a delay of six to eight months in promotion which caused "women officers to fall behind their male contemporaries." H. R. Rep. No. 216, *supra*, at 15; S. Rep. No. 676, 90th Cong., 1st Sess., 10.

(2) The amendment of 10 U. S. C. §§ 5704, 5711, and related sections so that all women line officers on active duty, including Reserve officers, will, like all men line officers on active duty, be considered for promotion by the same selection boards and in the same way.

Aside from § 6401, some distinctions between the promotion systems for male and female line officers did survive the 1967 Act. See, *e. g.*, 10 U. S. C. § 5707 (difference between men and women on standard for selection below lieutenant commander). It is significant, however, that as a result of the 1967 amendments, the tenure in years for unrestricted men and women line officers is the *same* for all grades in which involuntary separation or retirement is linked for both to years served. Compare 10 U. S. C. §§ 6376 and 6379 with § 6398; § 6380 with § 6400. However, in most instances men cannot be involuntarily retired until they have twice failed of selection *and* reached the required tenure in years, while for women failure to be promoted within the requisite number of years is sufficient.

in some instances involuntary retirement and separation provisions "permit women to remain on active duty for longer periods than male officers." It believed that "[u]nder current circumstances, *there is no logical basis for these differences.*" S. Rep. No. 676, *supra,* at 2. (Emphasis supplied.) See H. R. Rep. No. 216, *supra,* at 2–3; Hearing on H. R. 4772, 4903, 5894, before the Senate Committee on Armed Services, 90th Cong., 1st Sess., 41 (1967). The 1967 Act was to "apply the standard attrition provisions of male officers promotion and retirement laws to women officers. The *only* exception to this would be the selective continuation of nurses." H. R. Rep. No. 216, *supra,* at 3.[6] (Emphasis supplied.) See S. Rep. No. 676, *supra,* at 2. In light of these statements, Congress could not have had the purpose of compensating women line officers for their inferior position in the Navy by retaining longer tenure periods for women.

Moreover, the legislative history is replete with indications of a decision *not* to give women any special advantage. "The purpose of the legislation has been limited to the removal of arbitrary restrictions. No effort has been made to provide special assurances to women officers, and none is recommended." Letter from General Counsel, Department of Defense, in S. Rep. No. 676, *supra,* at 5; H. R. Rep. No. 216, *supra,* at 9. "The purpose of the bill is to create *parity only* in respect to recognizing merit and performance." *Id.,* at 7. See S. Rep. No. 676, *supra,* at 3.[7] (Emphasis supplied.)

---

[6] Congressman Rivers, Chairman of the House Committee on Armed Services, stated flatly during floor debate on H. R. 5894 that the bill assured that women "have the *same* tenure as male officers of the same grade." 113 Cong. Rec. 11303 (May 1, 1967). (Emphasis supplied.)

[7] Senator Thurmond, floor manager of the bill, made much the same point during hearings on the bill. He said: "[T]he purpose of this bill is not to provide special promotional opportunities for women

To infer a determination purposely to perpetuate a longer retention period for women line officers is, therefore, entirely to misconceive Congress' perception of the problem and of the proper solution. While the reason for the failure to revise §§ 6382 and 6401 is not clear, it is certainly plausible to conclude that Congress continued to believe, as it had in 1948, that the separation provisions for men and women would, given the opportunity to work properly, result in equal average tenure for both sexes.[8]

## II

Given this analysis of the relationship between § 6382 and § 6401, the difference in tenure which resulted in fact from the operation of these sections manifestly serves no overriding or compelling governmental interest. Indeed, appellants concede as much in discussing proposed H. R. 12405 (93d Cong., 2d Sess.), §§ 2 (5) and 4 (18), to which the Court refers, *ante,* at 510 n. 13: "The Department of Defense considers that the separate rule for women, while serving a *legitimate* governmental purpose . . . is on balance no longer *needed* as a matter of military personnel policy." Brief for Appellants 18. (Emphasis supplied.) Since the executive department most intimately concerned with the promotion policy in

___

or to give them any advantage, but it is to place them on a parity with or give them equal opportunities . . . ." Hearing on H. R. 4772, 4903, 5894 before the Senate Committee on Armed Services, 90th Cong., 1st Sess., 46 (1967).

[8] In addition, there are indications in the hearings on the bill that the reason for not changing §§ 6382 and 6401 was that the promotional systems for all services were then under review, and that the Armed Services therefore did not want to change in the interim provisions believed basically to apply equitably to both sexes. See Hearings on H. R. 5894 before Subcommittee No. 1 of the House Committee on Armed Services, 90th Cong., 1st Sess., 383 (1967) (remarks of Assistant Secretary Morris); Hearings, Senate Committee on Armed Services, *supra,* at 44 (remarks of General Berg).

the Navy can perceive no *need* for the gender-based classification under attack, the interest served by the classification, if any, can hardly be overriding or compelling.[9]

Further, while I believe that "providing special benefits for a needy segment of society long the victim of purposeful discrimination and neglect" can serve "the compelling ... interest of achieving equality for such groups," *Kahn* v. *Shevin,* 416 U. S., at 358–359 (BRENNAN, J., dissenting), I could not sustain this statutory scheme even if I accepted the Court's supposition that such a purpose lay behind this classification. Contrary to the Court's intimation, *ante,* at 508, women do not compete directly with men for promotion in the Navy. Rather, selection boards for women are separately convened, 10 U. S. C. § 5704, the number of women officers to be selected for promotion is separately determined, 10 U. S. C. § 5760, promotion zones for women are separately designated, 10 U. S. C. § 5764, and women's fitness for promotion is judged as compared to other women, 10 U. S. C. § 5707. In this situation, it is hard to see how women are disadvantaged in their opportunity for promotion by the fact that their duties in the Navy are limited, or how increas-

---

[9] The Court comments that the submission of H. R. 12405 "no more than reinforce[s] the view that it is for Congress, and not for the courts, to decide when the policy goals sought to be served by § 6401 are no longer necessary to the Navy's officer promotion and attrition programs." *Ante,* at 510 n. 13. But the Court does not, and could not, show that the gender-based classification underlying § 6401 was ever *necessary* to the Navy's program; it only ventures that Congress "*may ... rationally,*" *ante,* at 508 (emphasis supplied), have believed the policy to be wise or fair. Further, the close scrutiny which I believe gender-based classifications require necessitates that courts evaluate both the strength of the asserted interest and the need for the means chosen toward that end. Implicit in this task is that the courts do not necessarily accept the legislature's decisions about the need for certain legislation when gender-based distinctions are involved.

ing their tenure before separation for nonpromotion is necessary to compensate for other disadvantages.

## III

The Court suggests no purpose other than compensation for disadvantages of women which might justify this gender-based classification. I agree that the "up or out" philosophy "was developed to maintain effective leadership by heightening competition for the higher ranks while providing junior officers with incentive and opportunity for promotion." *Ante*, at 502–503. But the purpose behind the "up or out" philosophy applies as well to women as to men. The issue here is not whether the treatment accorded either women or men under the statutory scheme would, if applied evenhandedly to both sexes, forward a legitimate or compelling state interest, but whether the *differences* in the provisions applicable to men and women can be justified by a governmental purpose.[10]

For this same reason, the invocation of the deference due Congress in determining how best to assure the readi-

---

[10] In neither *Reed* v. *Reed,* 404 U. S. 71 (1971), nor *Frontiero* v. *Richardson,* 411 U. S. 677 (1973), was it doubted that the statutes in question forwarded legitimate governmental goals, absent the classifications by sex. In *Reed,* the Court expressly noted that "the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy," 404 U. S., at 76, and it noted that the statutory scheme set up non-sex-based classifications toward the same end, which it seemingly approved. *Id.,* at 77. Similarly, in *Frontiero,* the inquiry focused upon the "difference in treatment," 411 U. S., at 679, accorded women and men in determining eligibility for dependents' benefits, not upon the strength of the Government's interest in according dependents' benefits to members of the Armed Services. Thus, I fail to see how the strength of the governmental interest in the "up or out" system can distinguish *Reed* or *Frontiero.* See also *James* v. *Strange,* 407 U. S. 128, 141 (1972); *Weber* v. *Aetna Casualty & Surety Co.,* 406 U. S. 164, 173 (1972).

ness of our Armed Forces for battle cannot settle the issue before us. As *Frontiero* v. *Richardson,* 411 U. S. 677 (1973), illustrates, the fact that an equal protection claim arises from statutes concerning military personnel policy does not itself mandate deference to the congressional determination, at least if the sex-based classification is not itself relevant to and justified by the military purposes.

Thus, the validity of the statutory scheme must stand or fall upon the Court's asserted compensatory goal. Yet, as the analysis in Part I, *supra,* demonstrates, this purpose was not in fact behind either the original enactment of § 6401 or its retention in 1967. While we have in the past exercised our imaginations to conceive of possible rational justifications for statutory classifications, see *McGowan* v. *Maryland,* 366 U. S. 420, 425–428 (1961), we have recently declined to manufacture justifications in order to save an apparently invalid statutory classification. Cf. *James* v. *Strange,* 407 U. S. 128 (1972); *Weber* v. *Aetna Casualty & Surety Co.,* 406 U. S. 164 (1972). Moreover, we have analyzed asserted governmental interests to determine whether they were in fact the legislative purpose of a statutory classification, *Eisenstadt* v. *Baird,* 405 U. S. 438, 442–443 (1972), and have limited our inquiry to the legislature's stated purposes when these purposes are clearly set out in the statute or its legislative history. *Johnson* v. *Robison,* 415 U. S. 361, 376 (1974). Never, to my knowledge, have we endeavored to sustain a statute upon a supposition about the legislature's purpose in enacting it when the asserted justification can be shown conclusively *not* to have underlain the classification in any way.[11]

---

[11] Indeed, to do so is to undermine the very premises of deference to legislative determination. If a legislature, considering the competing factors, determines that it is wise policy to treat two groups of people differently in pursuit of a certain goal, courts often defer to that legislative determination. But when a legislature has decided

Since the Government here has advanced no governmental interest fairly to be gleaned from §§ 6382 and 6401 or their history which can justify this gender-based classification, I would affirm the judgment below.

MR. JUSTICE WHITE, dissenting.

Agreeing for the most part with MR. JUSTICE BRENNAN's dissenting opinion, I also dissent from the judgment of the Court.

---

*not* to pursue a certain goal, upholding a statute on the basis of that goal is not properly deference to a legislative decision at all; it is deference to a decision which the legislature could have made but did not. See Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv. L. Rev. 1, 44–45 (1972).