**Mary D. HRVATIN, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

**No. 91–217.**

United States Court of Veterans Appeals.

Nov. 4, 1992.

As Amended Nov. 20, 1992.

Allan A. Bonney, Airway Heights, Wash., was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, D.C., were on the pleadings, for appellee.

Before KRAMER, FARLEY and IVERS, Associate Judges.

KRAMER, Associate Judge:

In its decision of October 10, 1990, the Board of Veterans' Appeals (BVA) denied appellant's claim for entitlement to service connection for the cause of her husband's death, and as a consequence, implicitly denied her claim to Dependency and Indemnity Compensation (DIC). Upon consideration of the record and the filings of the parties in this case, we hold that the BVA did not err in applying the relevant laws and regulations in reaching its decision, and, therefore, we affirm.

## I.

Joseph Hrvatin, the veteran and husband of appellant, had active service with the Army from November 1941 to February 1945. R. at 1. While in action in North Africa near Turris, the veteran was struck in the lower right hip by an enemy machine gun bullet and sustained a fracture of the neck of the right femur bone. R. at 52. Two operations were performed on the femur to attach it to the hip socket with

screws. R. at 50, 52. Since these operations were not completely successful, the right femur was subsequently grafted into the hip. R. at 58–59. On February 1, 1945, the veteran received a discharge because of disability which at the time was described as a compound, comminuted, fracture of the neck of the right femur that had healed with incomplete fibrous ankylosis of the hip and knee. R. at 92.

On May 22, 1950, the veteran received a Veterans' Administration (now the Department of Veterans Affairs) (VA) orthopedic examination. R. at 119. The report of the orthopedic examination stated:

> It is this examiner's belief that the veteran would be more comfortable and better served with a prosthesis. Because of this fact and because of the limitations of motions of the hip, knee and ankle, it is this examiner's opinion that loss of use of the right leg exists because of injuries sustained.

R. at 115. As a result of this examination, the veteran's disability rating was increased to 90% as of May 22, 1950. R. at 119. The VA Regional Office (RO) rating board narrative stated in relevant part:

> We found that there was a complete fibrous ankylosis of the right hip joint with total absence of the head and neck of the femur. There is a 3.25″ shortening of the right leg, marked eversion of the leg, marked limitation of motion in the knee, and nearly complete ankylosis of the ankle. It is impossible for the veteran to sit in a public conveyance because ... there is no motion in the hip joint and the leg remains completely extended at all times.

R. at 118.

On April 6, 1989, Joseph Hrvatin died. His death certificate listed the cause of death as ventricular fibrillation due to coronary heart disease. R. at 381. Other significant conditions listed as contributing to his death were chronic obstructive pulmonary disease, end stage renal failure, and peptic ulcer disease. *Id.* On April 21, 1989, the veteran's widow, Mary Hrvatin, applied for certain benefits, the denial of which are the subject of this appeal. R. at 383.

In denying service connection for the cause of the veteran's death, the BVA stated that the veteran's service-connected disability did not substantially cause or contribute to the cause of death. *Mary D. Hrvatin*, BVA 91-___, at 6 (Oct. 10, 1991).

## II.

In order to obtain the DIC benefits appellant seeks, the veteran must have either died of a service-connected condition, 38 U.S.C. 1310(a) (formerly § 410(a)), or have had a 100% service-connected disability in effect for the ten years immediately preceding his death. 38 U.S.C. § 1318(a), (b) (formerly § 418(a), (b)).

## A.

■ Appellant contends that the veteran's loss of the use of his right leg was the functional equivalent of an amputation and, pursuant to 38 C.F.R. § 3.310(b) (1991), that the veteran, in effect, died of a service-connected condition. Title 38, Code of Federal Regulations, section 3.310(b), states in relevant part:

> (b) *Cardiovascular disease.* Ischemic heart disease or other cardiovascular disease developing in a veteran who has a service-connected amputation of one lower extremity at or above the knee ... shall be held to be the proximate result of the service-connected amputation....

The language of this regulation, however, does not provide for service connection based on functional equivalency of an amputation, as appellant contends. As the regulation is clear on its face, no further inquiry is needed. *See Ardestani v. I.N.S.,* — U.S. —, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). (Nor as discussed in section II.C., *infra,* was this regulation intended to extend to functional equivalency.) However, even if the regulation provided for functional equivalency, the evidence in the record is silent regarding any proposed amputation site, *i.e.*, at, above, or below the knee. The VA doctor, who performed the May 22, 1950, examination, simply stated that "the veteran would be better served

with a prosthesis" but that doctor did not mention the site where an amputation would take place. Thus, there is no evidence to suggest that the veteran's right leg would have been amputated at or above the knee as required by 38 C.F.R. § 3.310(b).

### B.

 Appellant further contends that 38 C.F.R. 3.310(b) violates the equal protection clause of the Fifth Amendment of the United States Constitution because the regulation discriminates against the class of veterans who lost all functional ability of a leg and did not have an amputation performed as opposed to the class of veterans who lost all functional ability of a leg and received an amputation.

"The Fifth Amendment ... does not [specifically] contain an equal protection clause as does the Fourteenth Amendment which applies only to the states. But ... discrimination may be so unjustified as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). In determining whether there has been due process, the Supreme Court applies the same standard to the federal government that it applies to the states under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See, e.g., Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Under this standard, where a classification does not affect an identifiable class, such as race or alienage, or a fundamental right, such as voting, the federal government need only meet the rational basis test. *See Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). Under this test, appellant, in order to demonstrate a constitutional violation, must show that the classification is arbitrary or does not bear any rational relationship to a legitimate government interest. *See Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

A rational basis for 38 C.F.R. § 3.310(b) clearly exists. Congress directed the VA to study the effect that leg amputation has on the development of cardiovascular disease. The study was performed by the National Academy of Sciences (NAS) and resulted in the adoption of 38 C.F.R. § 3.310(b). The NAS report did not study the relationship if any, between loss of use of a leg without amputation and any increased risk of contracting a cardiovascular disease. The Secretary's memorandum referenced the notice of proposed rulemaking regarding 38 C.F.R. § 3.310(b), which stated that the NAS study indicated that an amputation above the knee increases the risk of death from cardiovascular disease. Br. of Appellee at 3–4. Appellant, in her brief, inferentially acknowledged a rational basis for the regulation by stating that there is a medical distinction between an amputee and a non-amputee. Br. of Appellant at 5.

### C.

Appellant further contends that the veteran died of a service-connected condition, in that the loss of use of the veteran's right leg prevented him from obtaining an adequate amount of exercise which resulted in decreased peripheral blood circulation and caused his cardiovascular disease. There is no evidence in the record, however, to suggest that the veteran could not obtain adequate exercise or that a lack of adequate exercise caused his cardiovascular disease.

### III.

Appellant lastly contends that the veteran should have been rated at a 100% disability, rather than at 90%, for the ten years immediately preceding his death, and, consequently, qualifies for DIC under 38 U.S.C. § 1318(b)(1). Appellant argues that the 1950 rating decision (which awarded 90% disability) contained clear and unmistakable error in that it should have been combined with other disabilities of the hip and leg under the rating schedule for which the veteran was not rated. Thus, as a consequence, according to appellant, the

veteran is entitled to a 100% rating retroactive to 1950.

The issue of whether there was clear and unmistakable error was not before the BVA when it issued the decision which is the subject of this appeal, therefore, this issue is not ripe for the Court's consideration. *See* 38 C.F.R. § 3.105(a) (1991); *see also Russell v. Principi,* 3 Vet. App. 310 (1992); *Herzog v. Derwinski,* 2 Vet.App. 502 (1992); *Branham v. Derwinski,* 1 Vet.App. 93 (1990).

Assuming, arguendo, that this issue was properly presented, and further assuming that the 1950 rating board erred in its calculations of the percentage rating given the veteran's multiple disabilities, nevertheless, the veteran was not entitled to receive a rating greater than 90% based on percentage calculations. Under the amputation rule, contained in 38 C.F.R. § 4.68 (1991), "[t]he combined rating for disabilities of an extremity shall not exceed the rating for the amputation at the elective level, were amputation to be performed." Under 38 C.F.R. § 4.71(a), Diagnostic Code (DC) 5160, the highest possible rating for an amputation under the rating schedule (for an amputation of the thigh) is 90%. Consequently, no percentage of disability higher than 90% based on percentage calculations could have been awarded the veteran for his disability of the hip and leg. Provisions equivalent to 38 C.F.R. § 4.68, and 38 C.F.R. § 4.71(a), DC 5160, were in effect at the time of the 1950 rating decision and were applicable to that decision. *See* Part 4 of the Schedule for Rating Disabilities, 29 Fed.Reg. 6718 (1964); *see also* 38 C.F.R. § 3.321 (1991). Thus, even assuming that the rating board committed error in not awarding additional ratings for the hip and leg, it was harmless error. *See* 38 U.S.C. § 7261(b) (formerly § 4061(b)).

### IV.

For the reasons stated above, the decision of the BVA is AFFIRMED.