**Mark WALKER et al., Plaintiffs,**

v.

**Honorable David HALL, Governor, State of Oklahoma, et al., Defendants.**

**No. CIV-72-867.**

United States District Court,
W. D. Oklahoma.

May 17, 1975.

Motion for new trial denied July 14, 1975.

Fred P. Gilbert, Tulsa, Okl., for plaintiffs.

Steven E. Moore, James R. Barnett and James H. Gray, Asst. Attys. Gen., State of Oklahoma (Larry Derryberry, Atty. Gen., State of Oklahoma, on the brief), for defendants.

Before HOLLOWAY, Circuit Judge, DAUGHERTY, Chief District Judge, and EUBANKS, District Judge.

## MEMORANDUM OPINION

### HOLLOWAY, Circuit Judge.

Plaintiffs Mark Walker and Curtis Craig, young males wishing to purchase 3.2% beer, and Carolyn Whitener, a licensed beer vendor,[1] seek declaratory and injunctive relief against the defendant State officials to prevent enforcement of certain provisions of Oklahoma law regulating the sale of 3.2% beer. 37 O.S.A. §§ 241–245. Specifically, plaintiffs challenge the constitutionality under the Fourteenth Amendment to the Federal Constitution of those provisions of the statutes that prohibit sale to males 18 through 20 years of age of 3.-2% beer, while allowing such sale to females of the same ages, as applied to such sales for consumption off the premises of the vendor.[2]

Relief is sought in this suit under 42 U.S.C.A. § 1983 and federal jurisdiction is claimed pursuant to 28 U.S.C.A. §§

[1]. The claim of plaintiff Walker, as an affected male, is moot since he is now 21 years of age. However, prior to trial a new party plaintiff, Curtis Craig, was added. His date of birth was alleged as September 25, 1955, and it was further averred that he has attempted on numerous occasions to purchase 3.2% beer but has been unable to do so because of the statutory restrictions. He is thus still affected by the statutes so that his claim is not moot.

Plaintiff Whitener is a licensed vendor of 3.2% beer who desires to sell beer to males in the 18 to 20 year age group. It is alleged, and admitted by the defendants, that plaintiff Whitener fails and refuses to make such sales of beer because of the coercive and intimidating effect of past, present and threatened enforcement of the statutes in question and their criminal and administrative sanctions.

No challenge is made to the standing and requisite interest in the controversy of plaintiffs Craig and Whitener, and we are satisfied that their standing and their requisite interest for justiciability are sufficient.

[2]. Vendors of "non-intoxicating beverages," which are defined to include 3.2% beer, are required to be licensed for sale of such products for consumption on or off the premises. 37 O.S.A. §§ 163.7 and 163.11. The statutes directly in question here are 37 O.S.A. §§ 241 and 245. § 245 provides as follows:

§ 245. "Minor defined"

A 'minor' for the purposes of Sections 241 and 243 of Title 37 of the Oklahoma Statutes, is defined as a female under the age of eighteen (18) years and a male under the age of twenty-one (21) years.

Section 241 provides:

§ 241. "Sale, barter or gift to minor unlawful"

It shall be unlawful for any person who holds a license to sell and dispense beer and/or any agent, servant, or employee of said license holder to sell, barter or give to any minor any beverage containing more than one-half of one per cent alcohol measured by volume and not more than three and two-tenths (3.2) per cent of alcohol measured by weight. Provided, a parent as regards his own child or children, is excepted from the provisions of this Act.

Since 1933, Oklahoma has classified alcoholic beverages as "intoxicating" and "nonintoxicating" and has regulated them separately. Beverages containing more than three and two-tenths percent (3.2%) alcohol by weight are declared to be intoxicating. 37 O.S.A. § 163.1. Prior to 1959, intoxicating alcoholic beverages were generally prohibited. Since 1959, intoxicating alcoholic beverages have been regulated under 37 O.S.A. § 501 et seq. The sale of intoxicating alcoholic beverages is presently prohibited to any person under 21 years of age. 37 O.S.A. § 537(a)(1).

"Nonintoxicating" alcoholic beverages are those beverages containing less than one-half of one per cent alcohol by volume and less than 3.2% alcohol by weight. 37 O.S.A. § 163.1. This category is primarily, if not exclusively, composed of 3.2% beer. Nonintoxicating alcoholic beverages are regulated under 37 O.S.A. § 163.1 et seq. Since 1953, sale of such beverages to "any minor" has been prohibited. 37 O.S.A. § 241.

Prior to 1972, a minor in Oklahoma was defined as a male under twenty-one years of age or a female under eighteen years of age. This variation in ages was equalized for most purposes in 1972 with the enactment of 15 O.S.A. § 13:

Minors, except as otherwise provided by law, are persons under eighteen (18) years of age.

The legislature, did not, however, extend this equalization to the purchase of "nonintoxicating" alcoholic beverages. Along with § 13 of Title 15, the legislature enacted 37 O.S.A. § 245, which maintains the old definition of minor for the purposes of §§ 241 and 243 of Title 37. Laws 1972, c. 221, § 9, effective August 1, 1972.

1343 and 2201. We conclude we have jurisdiction under the jurisdictional grant in § 1343. This three-judge court was convened pursuant to 28 U.S.C.A. § 2281. See *Walker v. Hall*, No. 73–1267 (10th Cir.), decided October 23, 1973 (unpublished).

After scrutiny of the Oklahoma statutes in question, called for by the sexual classification made, for the reasons outlined below we hold that a rational legislative judgment was made in the alcoholic beverage regulation in question. Regardless of whether the challenges to the law may show it unwise—an argument that is for the legislature—we cannot say the attacks on the law have established that it violates the Federal Constitution.

We uphold the Oklahoma statutes in question for three main reasons: (1) in this case, unlike some others in which the Supreme Court and other courts have invalidated sex-based classifications, proof was made in which we find a rational basis for the legislative judgment underlying the challenged classification; (2) the classification here is directly related to apparent legislative objectives, looking to protection of the persons affected and the public; and (3) the statutes in question concern the regulation of alcoholic beverages—an area where the State's police powers are strengthened by the Twenty-first Amendment.

The arguments and proof of the parties and our findings are detailed below. This opinion shall constitute the findings of fact and conclusions of law of this court required by Rule 52 of the Federal Rules of Civil Procedure.

## I

At the outset we are faced with the recurring problem of the proper standard of review to apply in considering a federal constitutional challenge to a sex-based classification.

The plaintiffs argue that sex is an inherently suspect classification requiring strict scrutiny, so that the defendants are burdened with showing that the classification is necessary to the attainment of a compelling state interest, and that there are no less drastic alternatives to subserve the governmental interest (Brief of Plaintiffs 6–9). They rely on *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583; *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225; *Lamb v. Brown*, 456 F.2d 18 (10th Cir.); and *Bassett v. Bassett*, 521 P.2d 434 (Okl.App.), among other cases.

Defendants argue that the sale, purchase or trade in intoxicants is not a fundamental right; that the State has extraordinary power over the regulation of intoxicants; and that the traditional equal protection test is the proper one to apply here, under which a classification will be upheld if the statutory goals are legitimate and the classification rests on grounds bearing a rational relationship to the statute's objective. They rely on the standard laid down in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; and *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L. Ed.2d 393 (Brief of Defendants 3–4).

Prior to trial, the court considered one aspect of the problem. We advised the parties that, from a consideration of pertinent cases, the burden of proof rested on the defendants, and that the parties would proceed accordingly at trial. We did not feel required at that time to decide what constitutional standard should apply, it being sufficient then to designate the procedural order for the trial. However, now we must determine the standard to which the Constitution and Supreme Court decisions point. We are not persuaded that the position taken by either party furnishes the answer.

■ First, we feel the fact that the attack here is on an alcoholic beverage regulation, buttressed by the Twenty-first Amendment, does not call for the use of a less stringent equal protection standard than would otherwise apply, although we feel that this circumstance is to be weighed in our decision. The Su-

preme Court has recognized that its decisions do not go so far as to hold or say that the Twenty-first Amendment supersedes all other constitutional provisions in the area of liquor regulations. *California v. LaRue,* 409 U.S. 109, 115, 93 S.Ct. 390, 34 L.Ed.2d 342. See also *Hostetter v. Idlewild Liquor Corporation,* 377 U.S. 324, 332, 84 S.Ct. 1293, 12 L.Ed.2d 350; *Women's Liberation Union of Rhode Island v. Israel,* 512 F.2d 106 (1st Cir. 1975). The demands of the Equal Protection Clause still apply, and the standards of review that it mandates are not relaxed.

■ We feel that *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, provides the applicable test here. In *Reed* the Court stated, 404 U.S. at 75–76, 92 S.Ct. at 253:

In such situations, § 15–314 provides that different treatment be accorded to the applicants on the basis of their sex; it thus establishes a classification subject to scrutiny under the Equal Protection Clause.

In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. (citations omitted) The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

Last Term the Court applied the *Reed* test in *Kahn v. Shevin,* 416 U.S. 351, 355, 94 S.Ct. 1734, 40 L.Ed.2d 189, in upholding a sex-based classification in a State tax exemption statute. The Court made no reference to the compelling state interest test, despite a vigorous dissent arguing that it applied. And, in fact, the Court observed that "[g]ender has never been rejected as an impermissible classification in all instances." *Id.,* 416 U.S. at 356 n. 10, 94 S.Ct. at 1738.

Moreover, we now have the recent decisions of the Supreme Court in *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688; *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L. Ed.2d 514; and *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610, as further guidance. While these decisions formulate no new test, they at least demonstrate that the Court has not yet required the showing of a compelling governmental interest to sustain sex-based classifications.[3] Nor do they indicate a departure from the *Reed* test. We feel we should not impose a more stringent standard for judging the validity of such classifications, in view of the Supreme Court's obvious failure to do so. Hence we apply the *Reed* test.

We do feel it clear under *Reed* that the ordinary presumptions favoring the validity of state statutes do not fully apply where a sex-based classification is made. Nor does it suffice, we believe, that some state of facts may be conceived by the court that might justify the classification. Compare *McDonald v. Board of Election Commissioners,* 394

---

3. We recognize the dictum in *Duncan v. General Motors Corp.,* 499 F.2d 835 (10th Cir.), that the rationality test applied in *Reed v. Reed* appears no longer applicable. Id. at 838. The *Duncan* opinion pointed to the plurality opinion in *Frontiero v. Richardson, supra.* However, the subsequent decisions of the Supreme Court, see *Stanton v. Stanton, supra,* and other recent cases cited, recognize a higher standard has not yet been imposed by the Court. As stated, we feel we need only follow the formulation of the test set out in *Reed.* See *Lamb v. Brown,* 456 F.2d 18 (10th Cir.); *Moritz v. Commissioner of Internal Revenue,* 469 F.2d 466 (10th Cir.), cert. denied, 412 U.S. 906, 93 S.Ct. 2291, 36 L.Ed.2d 971.

U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739. Instead we feel the justification for the sex-based classification must be demonstrated by the State. *Lamb v. Brown*, 456 F.2d 18, 20 (10th Cir.). Accordingly we have placed the burden of proof on the defendants in our case. We turn now to the evidence they offered in support of the statutory classification, and to the plaintiffs' evidence.

## II

The principal proof offered by the defendants to support the rationality of the sex-based classification made by 37 O.S.A. §§ 241 and 245 was some eight exhibits:

Defendants' Exhibit 1 (see Appendix I hereto) is an extract of· data compiled by the Oklahoma State Bureau of Investigation from figures submitted by 194 police and sheriff's departments in Oklahoma, showing a breakdown by age and sex of persons arrested in Oklahoma for alcohol related offenses in the last four months of 1973. For the offense of driving under the influence, 427 males in the 18–20 year age group were arrested, as opposed to 24 females. Of the total number of persons of all ages arrested for driving under the influence, 5400 were male and 499 were female. Of those arrested for drunkenness in the 18–20 year age group, 966 were male and 102 were female. However the comparable figures for all ages were 14,713 males and 1,278 females, indicating even more male involvement in such arrests at later ages.

Defendants' Exhibit 2 (see Appendix I hereto) reflects the total number of persons arrested for various crimes by the Oklahoma City Police Department in 1973. For the offense of driving under the influence, 82% of the 18 year olds were male; 98% of the 19 year olds were male; and 94% of the 20 year olds were male. The corresponding percentages for the 21 year old group was 96% male, and for all ages was 92% males.

Defendants' Exhibit 3 (see Appendix I hereto) compiles the results of a ran-

dom roadside survey of drivers conducted at 19 locations in all quadrants of Oklahoma City during the evening hours in August· of 1972 and 1973. In 1972, 78% of the randomly selected drivers under 20 were male. Of this under-20 age group, 84% of the males stated that their drink preference was beer, as opposed to 77% of the females. 16.5% of the males in this age group stated that they had consumed alcoholic beverages within the last two hours prior to interview, as opposed to 11.4% of the females. 14.6% of the males in this age group had a blood alcohol concentration (BAC) greater than .01%, as opposed to 11.5% of the females. Of those drivers under 20 who had a BAC of greater than .01%, 29.7% of the males and 14.3% of the females had a BAC equal to, or greater than, .05%.

Comparable 1972 figures for drivers of all ages are as follows: 76% of the males and 54% of the females stated their drink preference as beer. 21.2% of the males and 14.1% of the females stated that they had consumed alcoholic beverages within the last two hours. 17.5% of the males and 10.8% of the females had a BAC of greater than .01%. Of those with a BAC of greater than .01%, 51.2% of the males and 36.8% of the females had a BAC equal to, or greater than, .05%.

The 1973 figures, although they contain some variations, reflect essentially the same pattern. In the under-20 age group, a greater percentage of males than females preferred beer, had consumed an alcoholic beverage within the last two hours, and had a significant BAC. As compared to all drivers interviewed, however, the under-20 age group generally showed a lower involvement with alcohol in terms of having drunk within the past two hours or having a significant BAC.

Defendants' Exhibits 4 and 5 are official summaries of motor vehicle traffic collisions in Oklahoma for 1972 and 1973. They show that of all persons killed or injured in motor vehicle colli-

sions, and particularly among drivers, the age group between 17 and 21 suffered the greatest number killed and injured. They further show that the number of males killed and injured in this age group—whether driver or otherwise —exceeded the number of females (this was generally true for other age groups as well), and that the number of deaths and injuries in the 17–21 age group increased from 1972 to 1973. These statistics did not show the levels of intoxication, if any, of those killed and injured in the 17–21 or other age groups (see Appendix I hereto).

Defendants' Exhibit 6 is an FBI report showing that over the years 1967–72 there had been a nationwide increase of 96% in the number of arrests for driving under the influence, for all ages.

Defendants' Exhibit 7 is a report by the Minnesota Department of Public Safety that shows driver fatalities as a function of blood alcohol concentration, sex and age, offered for the sole purpose of showing that Oklahoma statistics are in line with those of other states.

Defendants' Exhibit 8 is a report on a Joint Conference on Alcohol Abuse and Alcoholism (sponsored by the Departments of Justice, Transportation, and Health, Education and Welfare), referring to a Michigan study of the use of alcohol by persons involved in automobile collisions. Among the points made in the summary and conclusions of that study, the following are particularly relevant:

> Young drivers are not involved in more collisions than older drivers because of the use of alcohol. . . .

> In spite of the less significant role of alcohol in highway crashes involving youth, there is an important relationship of alcohol to youth-involvement in collisions which sharply differentiates them from the other age categories up to age 69. This concerns the impact of small amounts of alcohol; i. e., those resulting in BAC's which are positive but less than 0.05 percent. Among teenagers such low

concentrations are an important component in crashes, whereas in all other groups up to age 69 such concentrations are of no significance at all. There is evidence that drivers under 18, who already have the worst collision—vulnerability ratio with nothing to drink, increase that vulnerability threefold after just one or two drinks. At that level (0.01–0.04 percent BAC) all age groups between 25 and 69 appeared in collisions less often than in the control.

. . . . . .

Finally, we cannot blithely explain away a major part of the fatal crash problem among youth and dismiss the remainder as "expected." The fact remains that thousands of young drivers die each year and a substantial number of these unnecessary deaths are related to some use of alcohol.

In response the plaintiffs offered evidence of their own. Their proof consisted primarily of the testimony of two expert witnesses, a psychiatrist and a research psychologist. The psychiatrist testified that, in his opinion, there was no rational justification for the challenged statutory sex classification from a biological, sociological or psychiatric standpoint (Tr. 63–64). He rejected as a "folk myth" the notion of females maturing faster psychologically than males (Tr. 57–58, 70). However, he said it was his impression that males in the 18–20 year age bracket seem to have a greater interest in experimenting with alcohol than females of those ages (Tr. 58–59, 73–74), and that males do tend to use alcohol more readily, and more readily to the point of it being an identifiable abuse (Tr. 94). But he added that this disparity in use and abuse between males and females extended across all ages and was not confined to the 18–21 year age period, so that to the extent any exclusion by sex was justified, it should be extended to all males (Tr. 94–95).

In addition, plaintiffs offered several exhibits. One exhibit consisted of 1970

federal census data on Oklahoma showing *inter alia,* the total male population in the 18–20 age bracket. This was used as a premise for the argument that defendants' statistics, at best, showed a male alcohol problem which affects so "microscopically slight" a percentage of the total relevant male population as to be virtually *de minimis* from an overall statistical view. (See Brief of Plaintiffs at 37–43, 46). Another exhibit was an Oklahoma study done by the psychologist who testified for plaintiffs. Its conclusions indicated that females were physically no more able, and in some instances were less able, than males to handle comparable alcohol dosages.

### III

█ While the data and testimony are subject to several criticisms, which we recognize,[4] in examining the validity of the statute we are not dealing with proof of absolutes by a particular calculus, nor with proof of the elements of a given legal claim. Instead we are concerned with the broader question whether the proof sufficiently shows a rational basis for the legislative judgment.

██ With this in mind, we find in the record sufficient support of the rationality of the limited sex-based classification in question under the *Reed* test. We find such support in the record data indicating more likely consumption of beer by males in the 18–20 age group; more driving in this age group by males with significant BAC levels than by females; the greater number of vehicle injuries in the younger male group; and the apparent relationship of such injuries to alcohol use.[5] We conclude that the classification made has a fair and substantial relation to apparent objectives of the legislation for the protection of those affected and the public generally.[6]

█ The defendants argue that we should also consider the State's authority to regulate alcoholic beverages as strengthened by the Twenty-first Amendment, and we agree. In addition to their long-standing regulatory power under which the States were competent to prohibit the manufacture, sale or transportation of intoxicating liquors, see *Barbour v. Georgia,* 249 U.S. 454, 39 S.Ct. 316, 63 L.Ed. 704; *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205, the authority of the States in this area is reinforced by the Twenty-first Amendment. *State Board of Equalization v. Young's Market Co.,* 299 U.S. 59, 62, 57 S.Ct. 77, 81 L.Ed. 38. However, as we noted earlier, the Court has recognized that the decisions do not go so far as to hold or say that the Amendment supersedes all other provisions of the Constitution. *California v. LaRue,* 409 U.S. 109, 115, 93 S.Ct. 390, 34 L.Ed.2d

---

4. We realize that part of the data covers periods following enactment of the statute and that the statisical data are subject to various criticisms. Nevertheless, we feel the data are admissible in determining whether a rational basis exists for the classification. We feel that the facts that some proof covered periods after enactment of the statute, and that some statistics were based on surveys of only small percentages of the population, or may be otherwise imperfect, go to the weight of the proof only. Despite these limitations, we find in the proof a sufficient rational basis for the sex-based classification.

5. As stated in Part II, *supra,* the point was raised by the testimony of one of plaintiffs' expert witnesses that the larger male involvement in alcoholic beverage violations extended through older age groups. However, the plaintiffs have not attacked the disparity in treatment of those over and under 21, as such. Their only challenge to the statutory scheme is against the sex-based classification within the 18–20 age group.

Moreover, insofar as the classification affects only the 18–20 age bracket, we note that generally a legislature may address one phase of a problem neglecting the others. See *Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285.

6. We have no legislative history materials to reveal what the actual purpose of the legislature was. Nevertheless, on consideration of the proof of the State defendants, we feel it apparent that a major purpose of the legislature was to promote the safety of the young persons affected and the public generally.

342; and see *Hostetter v. Idlewild Liquor Corp.*, 377 U.S. 324, 330, 84 S.Ct. 1293, 12 L.Ed.2d 350; *Women's Liberation Union of Rhode Island v. Israel*, 512 F.2d 106 (1st Cir. 1975).

Nevertheless ". . . the case for upholding state regulation in the area covered by the Twenty-first Amendment is undoubtedly strengthened by that enactment . . .", *California v. LaRue*, *supra* 409 U.S. at 115, 93 S.Ct. at 395, and it is proper that we take into account this "broad constitutional power . . ." See *Schlesinger* v. *Ballard* 419 U.S. 498, 510, 95 S.Ct. 572. In conjunction with the basis for the classification which we find in the proof, we feel the special State regulatory power over alcoholic beverages strengthens the State's case that its statutory classification is valid.

We must consider with special care the recent decision in *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L. Ed.2d 688. The Court held that a Utah law providing generally that the period of minority for males extends to age 21 and for females to 18, "in the context of child support, does not survive an equal protection attack." *Id*. at 17, 95 S.Ct. at 1379.

The Utah trial court had held that this provision justified a divorced father in ceasing payments for his daughter's support when she became 18. The Supreme Court of Utah affirmed, rejecting an equal protection challenge to the sex-based classification. As justification for the classification, the Utah Court observed that some "old notions" continue to prevail, namely that generally it is the man's primary responsibility to provide a home and its essentials for the family; that despite exceptions, it is salutary for him to have a good education and training before he assumes that responsibility; that girls tend to mature earlier than boys; and that females generally tend to marry earlier than males. 30 Utah 2d 315 at 319, 517 P.2d 1010 at 1012.

The Supreme Court reversed, stating (421 U.S. at 14–15, 17, 95 S.Ct. at 1378, 1379):

Notwithstanding the "old notions" to which the Utah court referred, we perceive nothing rational in the distinction drawn by [the statutory provision] which, when related to the divorce decree, results in the [father's] liability for support for [his daughter] only to age 18 but for [his son] to age 21. This imposes "criteria wholly unrelated to the objective of that statute." A child, male or female, is still a child. No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas. . . . If a specified age of minority is required for the boy in order to assure him parental support while he attains his education and training, so, too, it is for the girl. To distinguish between the two on educational grounds is to be self-serving: if the female is not to be supported so long as the male, she hardly can be expected to attend school as long as he does, and bringing her education to an end earlier coincides with the role-typing society has long imposed. And if any weight remains in this day in the claim of earlier maturity of the female, with a concomitant inference of absence of need for support beyond 18, we fail to perceive its unquestioned truth or its significance, particularly when marriage, as the statute provides, terminates minority for a person of either sex.

\* \* \* \* \* \*

We therefore conclude that under any test—compelling state interest, or rational basis, or something in between—§ 15-2-1, in the context of child support, does not survive an equal protection attack. In that context, no valid distinction between male and female may be drawn.

We view our case as different from that before the Supreme Court in *Stan-*

*ton.* The justification offered here for the statutory classification is not based on any "old notions," or on archaic or overbroad generalizations not tolerated under the Constitution. Compare *Stanton, supra* 421 U.S. at 7, 95 S.Ct. 1373; *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610; *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514.[7] Instead, specific and relevant proof was submitted in which we find a rational basis for the statutory classification under the *Reed* test.

In sum, we find in the proof a rational basis for the classification, resting on a ground of difference having a fair and substantial relation to apparent objectives of the legislation, sufficient to sustain the statutes.

## IV

■ Plaintiffs further attack the statutory classification on the basis that it erects an unconstitutional irrebuttable presumption. They argue that, even giving defendants' statistics their broadest interpretation, there is no basis for condemning all males of the 18–20 age group since only a minute fraction was shown, by the data to present any special danger. They say that to categorize the entire sex on this basis erects a permanent irrebuttable presumption based on a "sex stereotype" that is no longer tolerable, relying on *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52; *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L. Ed.2d 63, and similar cases.

We cannot agree. In *Vlandis,* the court defined the constitutional principle limiting irrebuttable presumptions in the following terms, *id.* 412 U.S. at 452, 93 S.Ct. at 2236:

" . . . it is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, *and when the State has reasonable alternative means of making the crucial determination.* Rather, standards of due process require that the State allow such an individual the opportunity to present evidence showing that he is a bona fide resident entitled to the instate rates . . ." (Emphasis added).

Reliance on such cases is misplaced. They concerned statutes which, in effect, indelibly labelled given individuals to their prejudice, see also *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90; they did not involve statutes which provide general regulation of group conduct in advance, as here. Further, those cases involved no problem related to a large population group and a regulatory policy that was not amendable to individualized determinations. In contrast, here the plaintiffs' 1970 census data shows some 69,688 males in Oklahoma in the 18–20 age group (Plaintiffs' Ex. 2). We are satisfied that the problem before the legislature here was not one where there was a reasonable alternative means of making the crucial determination. *Vlandis v. Kline, supra,* 412 U.S. at 452, 93 S.Ct. 2230.

Moreover, the reinforcement of the State's authority by the Twenty-first

7. We do not rely on any notions of earlier female maturation, which the expert testimony here rejected, cf. *Stanton v. Stanton, supra,* 421 U.S. at 7, 95 S.Ct. 1373; *Lamb v. Brown,* 456 F.2d 18 (10th Cir.), or on similar assumptions.

We also note that the classification in question is not part of a statutory pattern based on overbroad generalizations by which younger males are generally treated differently than females. For most purposes Oklahoma equalized the treatment of males and females in 1972, at the same time that it enacted the statutes challenged here, by providing that all persons under 18 are minors, except as otherwise provided. 15 O.S. A. § 13. And in connection with "intoxicating" alcoholic beverages, sale is prohibited to all persons, male and female, under 21. 37 O.S.A. § 537(a)(1).

Amendment is relevant once again. *California v. LaRue,* 409 U.S. 109, 115, 93 S.Ct. 390, 34 L.Ed.2d 342. This is a regulatory field where the State has considerable latitude, as was the case in *Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 25 L.Ed.2d 491. Hence, if a classification has a sufficient rational basis, it does not offend the Constitution simply because it is not made with mathematical nicety or results in some inequality. *Id.* at 485, 90 S.Ct. 1153; see also *Kahn v. Shevin,* 416 U.S. 351, 355–56 & n.10, 94 S.Ct. 1734, 40 L.Ed.2d 189.

### V

While the case is not free from doubt, we conclude that we should uphold the statutes. We are unpersuaded that the classification violates constitutional principles barring irrebuttable presumptions. Nor are we persuaded by the equal protection challenge. We have subjected the sex-based classification to scrutiny and have required the State defendants to come forward with justification for it. On consideration of the proof, we find that the record supports the classification as reasonable, not arbitrary, one resting on a ground of difference having a fair and substantial relation to apparent objectives of the legislation. *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225; *Kahn v. Shevin,* 416 U.S. 351, 355, 94 S.Ct. 1734, 40 L.Ed.2d 189. The issue, of course, is not whether the statute could have been drafted more wisely, but whether the lines chosen by the legislature are within constitutional limitations. *Id.* 416 U.S. at 356, n.10, 94 S.Ct. 1734. We feel that they are.

Accordingly we are entering judgment upholding the statutes and dismissing the action.

### APPENDIX

#### DEFENDANTS' EXHIBIT 1

PERSONS ARRESTED BY AGE AND SEX FOR THE MONTHS SEPTEMBER, OCTOBER, NOVEMBER, AND DECEMBER, 1973 IN THE STATE OF OKLAHOMA FOR ALCOHOL RELATED OFFENSES

| | | 18 yrs. | 19 yrs. | 20 yrs. | Total Persons Arrested 18–65 and over |
|---|---|---|---|---|---|
| DRIVING UNDER THE INFLUENCE | Male | 152 | 107 | 168 | 5,400 |
| | Female | 14 | 2 | 8 | 499 |
| DRUNKENNESS | Male | 340 | 321 | 305 | 14,713 |
| | Female | 39 | 33 | 30 | 1,278 |

The information contained in this report is summarized crime statistical data compiled from sixty-four (64) Sheriff's Departments and one hundred thirty (130) Police Departments in the State of Oklahoma.

—84% population coverage—

(EXCERPT FROM DEFENDANTS' EXHIBIT 1)

DEFENDANTS' EXHIBIT 2

### OKLAHOMA CITY POLICE DEPARTMENT ARREST STATISTICS FOR THE YEAR 1973

Includes those released without having
been formally charged.

| CLASSIFICATION OF OFFENSES | SEX | A G E | | | TOTAL For All Ages |
|---|---|---|---|---|---|
| | | 18 yrs. | 19 yrs. | 20 yrs. | |
| DRIVING UNDER THE INFLUENCE | Male | 47 | 54 | 72 | 3,206 |
| | Female | 10 | 1 | 5 | 279 |
| DRUNKENNESS | Male | 102 | 104 | 96 | 9,413 |
| | Female | 18 | 22 | 19 | 823 |

(EXCERPT FROM DEFENDANTS' EXHIBIT 2)

DEFENDANTS' EXHIBIT 3

OMEC, Inc.

### MANAGEMENT AND ENGINEERING CONSULTING— APPLIED AND BASIC RESEARCH

December 15, 1973

The conditions for the surveys were as follows:

1. Only drivers of passenger cars, pickup trucks and an occasional motorcycle (less than 10 in 1973, none in 1972) were asked to participate.

2. Drivers were selected at random from vehicles actually in operation on the streets and highways of Oklahoma City.

3. The surveys took place during the month of August in 1972 and 1973.

4. Interviews with drivers were accomplished at nineteen different locations covering all quadrants of Oklahoma City between the hours of 6:00 p. m.–10:00 p. m. and 11:00 p. m.–3:00 a. m. on all seven days of the week.

5. Approximately 6 to 7 percent of those asked to participate refused to do so. These appeared to be scattered randomly over all age-sex-race groups in the population of interest, namely drivers of the motor vehicles mentioned in 1., above.

DEFENDANTS' EXHIBIT 3

6. Blood Alcohol Concentrations were taken by trained operators utilizing a Stephenson Model 900 Breathalyzer. An accompanying Mark calibration unit was utilized to insure accuracy of the device.

7. Total number of interviews taken was 1600 in 1972 and 1510 in 1973. Total number of interviews with drivers under 20 years of age was 313 in 1972 and 306 in 1973.

(EXCERPT FROM PAGE 1 OF DEFENDANTS' EXHIBIT 3)

TABLE 1. PARTIAL DATA SUMMARY, 1972 and 1973 Roadside Survey, Oklahoma City, Oklahoma, OMEC, Inc.

| RESPONDENT YEAR | Males Less Than 20 Years | | All Males | | Females Less Than 20 Years | | All Females | |
|---|---|---|---|---|---|---|---|---|
| | 1972 | 1973 | 1972 | 1973 | 1972 | 1973 | 1972 | 1973 |
| Drink Alcoholic Beverages—Yes (Percent) | 70.4 | 75.6 | 75.5 | 75.2 | 68.6 | 70.6 | 59.9 | 60.2 |
| Drank Alcoholic Beverages in Last 2 Hours— Yes (Percent) | 16.5 | 15.6 | 21.2 | 21.6 | 11.4 | 11.7 | 14.1 | 10.9 |
| BAC Greater Than .01 (Percent) | 14.6 | 8.4 | 17.5 | 16.7 | 11.5 | 7.4 | 10.8 | 7.8 |
| BAC Greater Than or Equal To .05 Given BAC Greater Than .01 (Percent) | 29.7 | 50.0 | 51.2 | 52.3 | 14.3 | 0.0 | 36.8 | 40.7 |
| Average Miles Driven | 15,670 | 16,794 | 19,360 | 20,042 | 10,471 | 10,456 | 10,803 | 11,399 |
| Average Days/ Week Driving Vehicle | 6.8 | 6.7 | 6.7 | 6.7 | 6.7 | 6.5 | 6.5 | 6.4 |
| Number of Participants | 243 | 238 | 1246 | 1161 | 70 | 68 | 354 | 349 |

TABLE 2. TOTAL MALES

| | | | | |
|---|---|---|---|---|
| Total Males (Number) | 1972: | 1246 | | |
| | 1973: | 1161 | | |

| a. Positive BAC | 1972: | BAC | Number | Percent |
|---|---|---|---|---|
| | | 00 | 984 | 78.97 |
| | | 01 | 39 | 3.13 |
| | | 02 | 44 | 3.53 |
| | | 03 | 29 | 2.33 |
| | | 04 | 33 | 2.65 |
| | | 05 | 16 | 1.28 |
| | | 06 | 18 | 1.44 |
| | | 07 | 16 | 1.28 |
| | | 08 | 20 | 1.61 |
| | | 09 | 11 | .88 |
| | | 10 | 2 | .16 |
| | | 11 | 6 | .48 |
| | | 12 | 5 | .40 |
| | | 13 | 4 | .32 |
| | | 14 | 3 | .24 |
| | | 15 | 4 | .32 |
| | | 16 | 3 | .24 |
| | | 17 | 1 | .08 |
| | | 18 | 1 | .08 |
| | | 19 | 1 | .08 |
| | | Refused | 6 | .48 |
| | 1973: | 00 | 950 | 81.83 |
| | | 01 | 14 | 1.21 |
| | | 02 | 30 | 2.58 |
| | | 03 | 32 | 2.76 |
| | | 04 | 25 | 2.15 |
| | | 05 | 19 | 1.64 |
| | | 06 | 17 | 1.46 |
| | | 07 | 14 | 1.21 |
| | | 08 | 12 | 1.03 |
| | | 09 | 9 | .78 |
| | | 10 | 7 | .60 |
| | | 11 | 5 | .43 |
| | | 12 | 3 | .26 |
| | | 13 | 5 | .43 |
| | | 14 | 2 | .17 |
| | | 15 | 6 | .52 |
| | | 18 | 2 | .17 |
| | | 21 | 1 | .09 |
| | | 24 | 1 | .09 |
| | | 25 | 1 | .09 |
| | | Refused | 6 | .52 |

TABLE 2. TOTAL MALES—Continued

| | | | | | |
|---|---|---|---|---|---|
| b. | Do you drink? Yes. | 1972: | | 941 | 75.52% |
| | | 1973: | | 873 | 75.19% |
| c. | Drink preference. | 1972: | Beer: | 713 | 75.77% |
| | | | Wine: | 69 | 7.33% |
| | | | Liquor: | 159 | 16.90% |
| | | 1973: | Beer: | 643 | 73.65% |
| | | | Wine: | 80 | 9.16% |
| | | | Liquor: | 150 | 17.18% |
| d. | Drank in Last 2 Hours? | 1972: | | 264 | 21.19% |
| | Yes. | 1973: | | 251 | 21.62% |

TABLE 3. MALES UNDER 20

Males Under 20 (Number) 1972: 243
1973: 238

| | | | BAC | Number | Percent |
|---|---|---|---|---|---|
| a. | Positive BAC | 1972: | 00 | 207 | 81.82 |
| | | | 01 | 9 | 3.56 |
| | | | 02 | 10 | 3.95 |
| | | | 03 | 8 | 3.16 |
| | | | 04 | 8 | 3.16 |
| | | | 05 | 2 | .79 |
| | | | 06 | 4 | 1.58 |
| | | | 08 | 2 | .79 |
| | | | 09 | 2 | .79 |
| | | | 11 | 1 | .40 |
| | | 1973: | 00 | 217 | 91.18 |
| | | | 01 | 1 | .42 |
| | | | 02 | 4 | 1.68 |
| | | | 03 | 3 | 1.26 |
| | | | 04 | 3 | 1.26 |
| | | | 05 | 2 | .84 |
| | | | 06 | 4 | 1.68 |
| | | | 07 | 1 | .42 |
| | | | 09 | 2 | .84 |
| | | | 10 | 1 | .42 |
| b. | Do you drink? Yes. | 1972: | | 171 | 70.37% |
| | | 1973: | | 180 | 75.63% |
| c. | Drink preference. | 1972: | Beer: | 143 | 83.63% |
| | | | Wine: | 13 | 7.60% |
| | | | Liquor: | 15 | 8.77% |
| | | 1973: | Beer: | 144 | 80.00% |
| | | | Wine: | 21 | 11.67% |
| | | | Liquor: | 15 | 8.33% |
| d. | Drank in Last 2 Hours? | 1972: | | 40 | 16.46% |
| | Yes. | 1973: | | 37 | 15.55% |

## TABLE 4. TOTAL FEMALES

| Total Females (Number) | 1972: | 354 | | | |
|---|---|---|---|---|---|
| | 1973: | 349 | | | |
| a. Positive BAC | 1972: | | BAC | Number | Percent |
| | | | 00 | 306 | 86.44 |
| | | | 01 | 8 | 2.26 |
| | | | 02 | 16 | 4.52 |
| | | | 03 | 3 | .85 |
| | | | 04 | 5 | 1.41 |
| | | | 05 | 4 | 1.13 |
| | | | 06 | 3 | .85 |
| | | | 07 | 1 | .28 |
| | | | 08 | 1 | .28 |
| | | | 09 | 1 | .28 |
| | | | 10 | 1 | .28 |
| | | | 12 | 2 | .56 |
| | | | 14 | 1 | .28 |
| | | | Refused | 2 | .56 |
| | 1973: | | 00 | 317 | 90.83 |
| | | | 01 | 2 | .57 |
| | | | 02 | 6 | 1.72 |
| | | | 03 | 7 | 2.01 |
| | | | 04 | 3 | .86 |
| | | | 05 | 4 | 1.15 |
| | | | 07 | 3 | .86 |
| | | | 08 | 2 | .57 |
| | | | 09 | 1 | .29 |
| | | | 10 | 1 | .29 |
| | | | 20 | 1 | .29 |
| | | | Aborted | 1 | .29 |
| | | | Refused | 1 | .29 |
| b. Do you drink? Yes. | 1972: | | | 212 | 59.89% |
| | 1973: | | | 210 | 60.17% |
| c. Drink preference. | 1972: | | Beer: | 114 | 53.77% |
| | | | Wine: | 30 | 14.15% |
| | | | Liquor: | 68 | 32.08% |
| | 1973: | | Beer: | 93 | 44.29% |
| | | | Wine: | 36 | 17.14% |
| | | | Liquor: | 81 | 38.57% |
| d. Drank in Last 2 Hours? | 1972: | | | 50 | 14.12% |
| Yes. | 1973: | | | 38 | 10.89% |

TABLE 5. FEMALES UNDER 20

| Females Under 20 (Number) | 1972: | 70 | | | |
| | 1973: | 68 | | | |
| a. Positive BAC | 1972: | BAC | Number | Percent |
| | | 00 | 61 | 87.14 |
| | | 01 | 2 | 2.86 |
| | | 02 | 3 | 4.29 |
| | | 03 | 2 | 2.86 |
| | | 04 | 1 | 1.43 |
| | | 06 | 1 | 1.43 |
| | 1973: | 00 | 63 | 92.65 |
| | | 02 | 2 | 2.94 |
| | | 03 | 3 | 4.41 |
| b. Do you drink? Yes. | 1972: | | 48 | 68.57% |
| | 1973: | | 48 | 70.59% |
| c. Drink preference. | 1972: | Beer: | 37 | 77.08% |
| | | Wine: | 4 | 8.33% |
| | | Liquor: | 7 | 14.58% |
| | 1973: | Beer: | 24 | 50.00% |
| | | Wine: | 12 | 25.00% |
| | | Liquor: | 12 | 25.00% |
| d. Drank in Last 2 Hours? | 1972: | | 8 | 11.43% |
| Yes. | 1973: | | 8 | 11.76% |

DEFENDANTS' EXHIBIT 4

O K L A H O M A

SUMMARY OF MOTOR VEHICLE TRAFFIC COLLISIONS

SUMMARY OF STATEWIDE COLLISIONS FOR YEAR 1972
(Month or other period)

This Summary includes reports and information available on March 19, 1973, FROM REPORTS OF COLLISIONS INVESTIGATED BY POLICE OFFICERS.

NUMBER OF PERSONS KILLED AND INJURED

| AGE Group | | TOTAL | | | | DRIVER | | | |
| | | KILLED | | INJURED | | KILLED | | INJURED | |
| | | Male | Fem. | Male | Fem. | Male | Fem. | Male | Fem. |
| | Municipal | 34 | 8 | 1640 | 1277 | 16 | 4 | 932 | 637 |
| 17–21 | Other | 82 | 26 | 1171 | 639 | 49 | 10 | 681 | 261 |
| | Statewide | 116 | 34 | 2811 | 1916 | 65 | 14 | 1613 | 898 |

(EXCERPT FROM PAGE 7 OF DEFENDANTS' EXHIBIT 4)

■■■■■■

DEFENDANTS' EXHIBIT 5

OKLAHOMA

SUMMARY OF MOTOR VEHICLE TRAFFIC COLLISIONS

SUMMARY OF STATEWIDE COLLISIONS FOR YEAR 1973

(Month or
other period)

This Summary includes reports
and information available on April 15, 1974

FROM REPORTS OF COLLI-
SIONS INVESTIGATED BY
POLICE OFFICERS.

---

### NUMBER OF PERSONS KILLED AND INJURED

| AGE GROUP | | TOTAL KILLED | | TOTAL INJURED | | DRIVER KILLED | | DRIVER INJURED | |
|---|---|---|---|---|---|---|---|---|---|
| | | Male | Fem. | Male | Fem. | Male | Fem. | Male | Fem. |
| | Municipal | 34 | 13 | 1796 | 1373 | 16 | 6 | 995 | 695 |
| 17–21 | Other | 91 | 27 | 1277 | 676 | 53 | 9 | 745 | 292 |
| | Statewide | 125 | 40 | 3073 | 2049 | 69 | 15 | 1740 | 987 |

(EXCERPT FROM PAGE 7 OF DEFENDANTS' EXHIBIT 5)

LETTER ORDER

May 14, 1974

Gentlemen:

The Court has decided from a consideration of pertinent cases that the burden of proof in the above case rests on the defendants. The parties will proceed accordingly with reference to the May 20 trial.

Very truly yours,

(s) Fred Daugherty

Fred Daugherty
U. S. District Judge