In the Matter of James F. CRIST, Jr., Debtor.

James F. CRIST, Jr., Plaintiff,

v.

Jane S. CRIST, Defendant.

No. B77–1759A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 21, 1978.

James W. Penland of Macey & Zussman, Atlanta, Ga., for plaintiff.

John C. Gray and Charles Ratz of Ringel, Gray & Hinson, Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This action is before the Court on appeal from a decision by United States Bankruptcy Judge Robinson filed on May 17, 1978. The plaintiff-debtor appeals the bankruptcy judge's ruling on his motion to determine the dischargeability of Jane S. Crist's claims in this Chapter XII proceeding.

The motion for a determination was heard by the bankruptcy judge on February 24, 1978. As a result of that hearing, the bankruptcy judge made the following twenty-four findings of fact:

1. On March 4, 1977, James F. Crist, Jr. (hereinafter, "Debtor") and Jane S. Crist (hereinafter, "Defendant") were divorced by order of the Superior Court of Fulton County, Georgia according to the terms of the Final Judgment and Decree (Joint Exhibit 1) entered that day.

2. Said Final Judgment and Decree was based upon the Stipulation placed in the Record of the divorce action by the Court (Joint Exhibit 2) on February 9, 1977.

3. On March 29, 1977, a Separation Agreement was reached and executed by the parties (Joint Exhibit 3, hereinafter, "Separation Agreement").

4. On March 30, 1977, another order (Joint Exhibit 4, hereinafter "Order") was entered in the divorce case completely amending the Final Judgment and Decree and fully incorporating the Separation Agreement.

5. Under the terms of the Order, the Defendant was awarded a judgment against the Debtor which included $30,000.00 in cash (Paragraph 4.A of the Separation Agreement), $350.00 per month termed alimony (Paragraph 4.B.) until such time as the $30,000.00 cash payment required by Paragraph 4.A. of the Separation Agreement was paid in full, and $5,000 in attorneys fees awarded to Defendant's Attorney John C. Gray (Paragraph 4.G.). No monetary limit was included within the terms of the Order and Separation Agreement restricting the total amount of monthly alimony payments that could be required before the monthly alimony payments could be terminated by the Debtor. Pursuant to the Order, Defendant was also to receive $350.00 per month as child support for her minor daughter.

6. Additionally, under the terms of the Separation Agreement and Order the Debtor was required to transfer to the Defendant all right, title and interest in a 1974 Oldsmobile Vista Cruiser Station Wagon (Paragraph 4.C.) and all items listed in Exhibit "B" (Paragraph 4.D.) and Exhibit "G" to the Separation Agreement.

7. Pursuant to the Separation Agreement (Joint Exhibit 3) and Order, Debtor executed two promissory notes, one in the amount of $30,000.00 (Joint Exhibit 5) to evidence his obligation under Paragraph 4.A. of the Separation Agreement and another in the amount of $5,000.00 (Joint Exhibit 6) to evidence his attorney's fee obligation under Paragraph 4.G. of the Separation Agreement.

8. The Debtor also executed a "Debt Obligation" (Joint Exhibit 7) to evidence the $350.00 per month alimony obligation under Paragraph 4.B. of the Separation Agreement.

9. In addition, the Debtor executed a "Deed to Secure Debt" (Joint Exhibit 8) pursuant to Paragraph 4.H. of the Separation Agreement and Order which was properly filed and recorded March 30,

1977, for the purpose of securing the payments required by the notes (Joint Exhibits 5 and 6) and the Debt Obligation (Joint Exhibit 7).

10. On March 29, 1977, Debtor paid the Defendant $7,500.00, five thousand dollars of which was pursuant to the $30,000.00 Note (Joint Exhibit 5) and Paragraph 4.A. of the Separation Agreement and Order and $2,500.00 of which was pursuant to the $5,000.00 Note (Joint Exhibit 6) and Paragraph 4.G. of the Separation Agreement and Order.

11. On April 29, 1977, Debtor paid the Defendant an additional $2,500.00 pursuant to the $30,000.00 Note (Joint Exhibit 5) and Paragraph 4.A. of the Separation Agreement and Order.

12. Additionally, Debtor made monthly alimony payments of $350.00 per month during April and May of 1977 pursuant to the Debt Obligation (Joint Exhibit 7) and Paragraph 4.B. of the Separation Agreement and Order.

13. No further monthly alimony payments have been made since the May, 1977 payment. Permanent monthly alimony payments required by Paragraph 4.B. of the Separation Agreement and Order which were not made to the date of the trial (February 24, 1978) total $3,150.00.

14. All items of personal property listed on Exhibit "G" of the Separation Agreement as incorporated in the Order belonged to the Debtor prior to the execution of the Separation Agreement and were transferred to the Defendant pursuant to the Separation Agreement and Order in lieu of back alimony and child support due prior to February 21, 1977. This transfer was effective as of the date of execution of the Separation Agreement.

15. Ownership of the items listed in Exhibit "B" of the Separation Agreement as incorporated in the Order prior to the execution of the Agreement is stipulated in Joint Exhibit 9. All these items were transferred to the Defendant's ownership upon execution of the Separation Agreement.

16. The title to the 1974 Oldsmobile Vista Cruiser Station Wagon referred to in Paragraph 4.C. of the Separation Agreement was in the Debtor when Agreement was signed. Title to this automobile has been transferred to the Defendant pursuant to the terms of the Separation Agreement and Order.

17. The shares of "Old Republic" stock referred to in Paragraph 4.F. of the Separation Agreement belonged to the Defendant at the time the Agreement was executed.

18. On July 30, 1977, the value of the Rivermeade residence owned in fee simple by the Debtor exceeded the outstanding loan balance of the first lien security interest held by Charter Mortgage Company and the outstanding balance of the second lien security interest held by Fidelcorp Mortgage Corporation by more than $35,000.00.

19. Joint Exhibit 11 contains true and correct copies of discovery pleadings filed in the divorce action between the parties.

20. Joint Exhibit 12 contains compilations of checking account activity and other financial data compiled by counsel for the Defendant prior to approximately February 9, 1977.

21. The $30,000 cash payment required to be made by the Debtor to the Defendant by Paragraph 4.A. of the Separation Agreement and Order was intended by the parties to that Agreement to cushion the Defendant-wife during the transition period following the divorce, to help her re-establish herself economically and to contribute towards her maintenance and support.

22. The $350.00 per month alimony payment required to be made by the Debtor to the Defendant by Paragraph 4.B. of the Separation Agreement and Order was intended by the parties to that Agreement to provide for and contribute towards the maintenance and support of the Defendant-wife.

23. The transfer to the Defendant of the 1974 Oldsmobile Vista Cruiser Station

Wagon and all those items listed in Exhibits "B" and "G" of the Separation Agreement not already owned by the Defendant pursuant to the Separation Agreement and Order were intended by the parties to that Agreement to cushion the Defendant during the transition period following the divorce, to help her re-establish herself economically, and to contribute toward her maintenance and support.

24. Neither Defendant nor her agent had reasonable cause to believe that the Debtor was insolvent at the time of any transfers of property and money by the Debtor to the Defendant pursuant to the Separation Agreement and Order and the documents created and executed pursuant thereto.

On appeal the Debtor has raised several objections to the lower Court's conclusions of law. He primarily asserts that Section 17(a)(7) of the Bankruptcy Act, 11 U.S.C. § 35(a)(7), is constitutionally invalid under the due process clause of the Fifth Amendment because of its impermissible gender-based distinctions. The Debtor also contests the bankruptcy judge's finding that a March 30, 1977 Order, incorporating the Separation Agreement constituted the final step in a novation, creating a new obligation running from the Debtor to the defendant and extinguishing the old one.

■ Finally, the Debtor objects to the bankruptcy judge's conclusion that the property transfers to the defendant did not create a voidable preference under Section 60 of the Bankruptcy Act, 11 U.S.C. § 96. Since the Court finds that each of the contested transfers comes within the terms of Section 17(a)(7) of the Bankruptcy Act and the terms of that Section do not make an impermissible gender based distinction, the two latter objections of the Debtor need not be considered.

Section 17(a)(7) of the Bankruptcy Act provides in pertinent part, as follows:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . , . (7) are for alimo-

ny due or to become due, or for maintenance or support of wife or child . . 11 U.S.C. § 35(a)(7).

■ The plaintiff contends Section 17(a)(7) is constitutionally invalid in that its exclusive reliance upon gender allows for the conference of benefits and burdens based solely on sexually related assumptions as to dependency. Traditional equal protection analysis requires that a legislative classification, "be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia,* 235 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920). The Supreme Court has held that classifications distinguishing between the sexes are "subject to scrutiny under the Equal Protection Clause." *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).

■ While gender based classifications are subject to scrutiny under the equal protection clause, they are not inherently unconstitutional. "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). The Supreme Court has recognized reduction of the disparity in the economic condition between men and women caused by the long history of discrimination against women as such an important governmental objective. *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

The Supreme Court's decision in *Kahn* is especially instructive. In *Kahn* the Court upheld a Florida Statute providing a $500 property tax exemption for widows, but not for widowers. The Court considered the financial difficulties facing the widowed female in contrast to those facing the widowed male. The rationale relied on by the

Court in *Kahn* is equally applicable to the divorced female. Especially pertinent is the Court's statement that:

> While the widower can usually continue in the occupation which preceded his spouse's death, in many cases the widow will find herself suddenly forced into a job market with which she is unfamiliar, and in which, because of her former economic dependency, she will have fewer skills to offer. (footnote omitted)
>
> *Kahn,* 416 U.S. at 354, 94 S.Ct. at 1737.

This Court is well aware that gender based distinctions must be justified by more than "archaic and overbroad" generalizations, *Schlesinger v. Ballard,* 419 U.S. at 508, 95 S.Ct. 572, about female dependency or female inability to cope in the marketplace. Although spurning such absurdities, the Court recognizes that a divorced female, like a widow, is likely to encounter more difficulty in meeting financial obligations than a divorced male. This is especially true during the time immediately following a divorce. By serving the important governmental objectives delineated in *Kahn,* and recognized in federal legislation, see Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Section 17(a)(7) satisfies the constitutional requirements for gender based classifications as stated in *Craig v. Boren,* 429 U.S. at 197, 97 S.Ct. at 457.

As used in Section 17(a)(7), the term "alimony" carries no sexual connotation. Although the section specifies that debts for the maintenance of a wife are not dischargeable, this does not preclude its application to a female bankrupt who is paying alimony. In abstract terms then, Section 17(a)(7) does not make a gender based distinction. The gender based distinction arises only in the context of applying Georgia law to the Statute. In Georgia, alimony may not be awarded to the ex-husband. Ga.Code Ann. § 30–201; *Murphy v. Murphy,* 232 Ga. 352, 206 S.E.2d 458 (1974), cert. den. 421 U.S. 929, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1974); *Mack v. Mack,* 234 Ga. 692, 217 S.E.2d 278 (1974). In *Murphy,* the Georgia Supreme Court held that sex based distinctions in Georgia's alimony laws had a fair and substantial relation to the purpose of the legislation, which was to provide support for the dependent wife of a broken marriage. *Murphy,* 232 Ga. at 353, 206 S.E.2d 458.

In the present action the Debtor is apparently seeking a collateral attack on the award of alimony to his ex-wife. Such a contest would be more properly held in the State Court which made the alimony award. The bankruptcy laws should not be used as a tool to evade those obligations, nor are the bankruptcy laws the proper medium for an attack on Georgia's alimony laws.

The only question left for determination is whether or not the money and property awarded to the defendant as a result of her divorce came within the coverage of Section 17(a)(7). In findings of fact numbered 21, 22, and 23, the bankruptcy court held that the property transferred contributed to the maintenance and support of the Debtor's wife. It is a well established rule that the district court is bound by the bankruptcy judge's findings of fact unless they are clearly erroneous. *In re Mascolo,* 505 F.2d 274, 277 (1st Cir. 1974); *In re American Packers Exchange, Inc.,* 449 F.2d 1313 (1st Cir. 1977). There has been no showing that the referenced findings of fact are erroneous and they are adopted by this Court.

Accordingly, the Plaintiff-Debtor's appeal from the determination of the bankruptcy judge is DENIED.

So ORDERED, this the 21st day of September, 1978.